# United States Court of Appeals
## For the First Circuit

No. 11-1094

UNITED STATES OF AMERICA,

Appellee,

v.

GERARD SASSO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Selya and Dyk,*
Circuit Judges.

Rheba Rutkowski, Assistant Federal Public Defender, for appellant.
William D. Weinreb, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

September 17, 2012

*Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  The government charged defendant-appellant Gerard Sasso with one count of interfering with the operation of an aircraft with reckless disregard for human life and one count of making false statements.  See 18 U.S.C. §§ 32(a)(5), 1001.  After a four-day trial, a jury found the defendant guilty as charged.  The defendant was sentenced to serve three years in prison.  On appeal, the defendant raises a gallimaufry of issues, only two of which need be discussed.

We begin with the defendant's plaint that the district court should have granted his motion for a judgment of acquittal because the evidence did not suffice to support his conviction under 18 U.S.C. § 32(a)(5).  See Fed. R. Crim. P. 29.  We review de novo the denial of a Rule 29 motion.  See United States v. Dwinells, 508 F.3d 63, 72 (1st Cir. 2007).  In determining whether the evidence suffices to sustain a conviction, we take the facts and all reasonable inferences therefrom in the light most favorable to the jury verdict.  United States v. Walker, 665 F.3d 212, 224 (1st Cir. 2011).  The verdict must stand unless the evidence is so exiguous that no rational jury could conclude that the government proved all the essential elements of the offense of conviction beyond a reasonable doubt.  United States v. Rodríguez-Vélez, 597 F.3d 32, 39 (1st Cir. 2010).

The evidence, taken agreeably to the verdict, reveals the following.  On the night of December 8, 2007, two members of the

-2-

Massachusetts State Police (Lieutenant Timothy Riley and Trooper Michael Basteri) flew a helicopter escort of a liquefied natural gas tanker as it traversed Boston Harbor en route to a facility in Everett, Massachusetts. At about 9:00 p.m. (as the helicopter was flying over the Mystic River), the troopers noticed a bright green light two to three miles to the northwest. Basteri recognized the green light as a laser beam and warned Riley (the pilot) not to look at it. Riley swerved to avoid direct contact, but the laser beam hit the aircraft, filling the cockpit with bright green light.

The troopers elected to abandon their escort mission in order to track down the source of the laser beam. As they flew toward their quarry in a zigzag pattern, the beam struck the helicopter several times. The final strike occurred when the helicopter was approximately half a mile away from the source.

The troopers determined that the laser beam was emanating from the third floor of a triple-decker house on the Medford-Somerville border. They radioed this information to police officers on the ground. Medford police, including Sergeant Jack Buckley, responded and knocked on the door of the defendant's third-floor tenement at 590 Main Street.

When the defendant answered the knock, the officers told him that they were investigating a laser strike on a helicopter. The defendant denied any involvement in the incident and said that

he had no lasers or laser-like instruments in his abode. He invited the officers to look around, which they did.

The officers pressed the question of whether the defendant possessed any lasers, and he eventually admitted that he had a small keychain laser. He nevertheless continued to maintain that he did not possess any other lasers. By like token, he denied any involvement in the helicopter incident.

Buckley then noticed an item on the defendant's nightstand that appeared to be a laser pointer. When asked about the artifact, the defendant began to backtrack. According to Buckley, the defendant said, "I did it. It was me," and added that he was sorry and did not mean to cause all the commotion. The defendant explained that he had a penchant for stargazing, and that when he saw the helicopter he decided to "light it up." When he heard the helicopter directly overhead, he "got scared" and hid the laser that he had pointed at the helicopter in a baseboard heater.

Buckley retrieved the hidden laser, which had a label reading "DANGER laser radiation, avoid direct eye exposure, laser diode, wavelength 532nm, max output 240mw." Asked if he owned any other lasers, the defendant opened a bureau drawer containing nine additional lasers.

On June 18, 2008, the defendant was arrested and brought to the federal courthouse in Boston. Special Agent Michael Ryan of the Department of Homeland Security testified that during the ride

the defendant "acknowledged that he had lased the helicopter and he further provided that he didn't realize it was a Massachusetts State Police helicopter until it was around his house."

The defendant contends that this evidence was insufficient to prove beyond a reasonable doubt that he had the scienter required under 18 U.S.C. § 32(a)(5). He argues that the government failed to prove that he willfully interfered with the operation of the helicopter with reckless disregard for the safety of human life. We disagree. In our view, the evidence was sufficient to convict.

Drawing all plausible inferences in favor of the verdict, a reasonable jury could have found — as this jury did — that the government proved all the elements of the offense beyond a reasonable doubt. The jurors heard testimony that the defendant admitted that he had "noticed the helicopter and decided to light it up." They also heard testimony that notwithstanding the helicopter's zigzag flight path, the laser struck it repeatedly. Based on this testimony, the jurors could reasonably infer that the defendant intended all along to target the helicopter. Given the warning label on the laser, the jurors could further infer that the defendant knew that aiming the laser at the helicopter might interfere with its operation and thereby pose a risk to human life. To cinch matters, an attempt to cover up the commission of a crime implies consciousness of guilt. See United States v. Gonsalves,

668 F.2d 73, 75 (1st Cir. 1982); see also United States v. Vega Molina, 407 F.3d 511, 530 (1st Cir. 2005) ("Consciousness of guilt evidence is generally admissible in a criminal case."). Here, the jurors could reasonably infer consciousness of guilt (and, thus, intent) from the defendant's endeavor to conceal his possession of the laser that he had pointed at the helicopter.

To say more about the Rule 29 claim of error would be supererogatory. On the facts of this case, it is clear that a rational jury could conclude that the government satisfied its burden of proving all the elements of the charged crime beyond a reasonable doubt. The motion for a judgment of acquittal was, therefore, appropriately denied.

The defendant's next assignment of error implicates the same count of conviction. He calumnizes the district court's construction of the scienter requirement as reflected in both the jury instructions and the verdict form. The defendant fully preserved these objections below.

Preserved claims of instructional error are assessed on appeal under a bifurcated framework. DeCaro v. Hasbro, Inc., 580 F.3d 55, 61 (1st Cir. 2009). We review de novo questions about whether the instructions conveyed the essence of the applicable law and review for abuse of discretion questions about whether the court's choice of language was unfairly prejudicial. Id. In this instance, the claim of instructional error involves the district

court's interpretation of the scienter element of section 32(a)(5), engendering de novo review. See United States v. Pitrone, 115 F.3d 1, 4 (1st Cir. 1997) (explaining that when a claimed error "involves the interpretation of the elements of a statutory offense, it poses a question of law" and engenders de novo review).

We hasten to add a caveat. Even an incorrect instruction to which an objection has been preserved will not require us to set aside a verdict if the error is harmless. See United States v. Argentine, 814 F.2d 783, 788-89 (1st Cir. 1987). There are two barometers for measuring harmless error in a criminal case. The stricter standard, applicable mainly to issues of constitutional dimension, requires the government to prove beyond a reasonable doubt that the error did not influence the verdict. See Chapman v. California, 386 U.S. 18, 23-24 (1967); Argentine, 814 F.2d at 789. The less stringent standard, applicable mainly to trial errors that are not of constitutional dimension, allows a conviction to stand, error notwithstanding, as long as it can be said "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946). Here, we assume, favorably to the government, that the less stringent Kotteakos standard applies.

Section 32(a)(5) makes it a crime to:

> willfully . . . interfere[] with or disable[],
> with intent to endanger the safety of any

-7-

person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of [an] aircraft or any air navigation facility aiding in the navigation of any such aircraft . . . .

With respect to the charge brought under this section, the court instructed the jury as follows:

Count 1 charges the defendant with a violation of a federal statute that makes it a crime for anyone acting with a reckless disregard for the safety of others to willfully interfere with persons operating an aircraft in the special aircraft jurisdiction of the United States. In order for the defendant to be found guilty on Count 1, the government must prove each of the following elements beyond a reasonable doubt.

First, the government must prove that the defendant willfully interfered with a person engaged in the authorized operation of an aircraft. To act "willfully" in this context means to act deliberately and intentionally, on purpose, as opposed to accidentally, carelessly or unintentionally. If a person's actions interfere with an aircraft operator, you may infer that the person acted willfully if his actions were deliberate and intentional and had the natural and probable effect of interfering with the aircraft operator.

Second, the government must prove that the defendant acted with a reckless disregard for the safety of human life. A defendant acts with a reckless disregard for the safety of human life if he is aware that his actions create a substantial and unjustifiable risk to the safety of human life and he consciously disregards that risk.

The defendant argues that this instruction erroneously diluted the mens rea requirement of section 32(a)(5) by inviting the jury to "infer that the person acted willfully if his actions were

-8-

deliberate and intentional and had the natural and probable effect of interfering with the aircraft operator."

We conclude that this claim of error is well-founded. Reasonable jurors could understand from the quoted instruction that it would be enough to convict the defendant if they found that he deliberately pointed a laser in the helicopter's direction and interference occurred as a natural and probable consequence of that action, regardless of whether the defendant knew that interference was a natural and probable effect of the action. So viewed, the instruction did not adequately distinguish between negligently (but innocently) pointing a laser at objects in the sky without any intent to interfere with the operation of an aircraft and "willfully . . . interfer[ing]," which is the level of scienter demanded by the plain text of the statute.

The defendant not only objected to the misleading nature of the court's instruction, but also proposed an instruction designed to cure the defect. While the court was under no obligation to parrot the defendant's proposed jury instruction, see United States v. McGill, 953 F.2d 10, 12 (1st Cir. 1992), it had an obligation to put the scienter question fairly to the jury. Here, the instruction given strayed from an even-handed statement of the applicable law.

In an effort to blunt the force of this reasoning, the government asseverates that the charge as a whole correctly

instructed the jury as to the required mens rea. In support, the government points to the first part of the instruction on Count 1, which stated that "the government must prove that the defendant willfully interfered with a person engaged in the authorized operation of an aircraft," and defined "willfully" as meaning "deliberately and intentionally, on purpose, as opposed to accidentally, carelessly or unintentionally."

We reject this asseveration. While this language was on track, the instruction was derailed by the subsequent sentence, which invited the jurors to infer that the defendant acted willfully "if his actions were deliberate and intentional and had the natural and probable effect of interfering with the aircraft operator."

This error was not harmless. The defendant denied (or attempted to explain away) the more damning admissions attributed to him by the government's witnesses. The proof of scienter, stripped of these admissions, was less than compelling. The upshot is that the evidence of the defendant's guilt, though sufficient, was not overwhelming.

In sum, scienter was a hotly contested and fairly debatable issue. Viewing the record as a whole, we think that there is too great a likelihood that the instructional error may have influenced the verdict. Consequently, we are required to vacate the conviction on the section 32(a)(5) count and remand for

a new trial. See United States v. Pacheco, 434 F.3d 106, 117 (1st Cir. 2006).

If more were needed — and we doubt that it is — the district court used a shorthand in crafting the verdict form. On the form, the parenthetical description of Count 1 read: "Interfering with the Operation of an Aircraft with Reckless Disregard for Human Life." The defendant contends that because this description omitted the word "willfully," it may have left jurors with the misimpression that they could convict him if they found that he interfered with the operation of the helicopter with reckless disregard for the safety of human life, regardless of whether that interference was willful. This contention has some bite: the omission of the term "willfully," though perhaps unimportant had it been coupled with a more precise instruction concerning scienter, reinforces our conclusion that the court's instructional error was likely to have influenced the verdict.

We need not tarry over the defendant's other claims of error. Because the defendant's conviction on Count 1 must be vacated, a new trial will be required. We are loath to speculate about how that new trial will proceed. For this reason, we think that it would be imprudent to rule gratuitously upon the defendant's remaining assignments of trial and sentencing error.[1]

_____

[1] These claims of error include an objection to the district court's refusal to permit a view, complaints about the court's exclusion of certain evidence, and a contention that the sentence

-11-

One loose end remains.  The defendant does not challenge his conviction on Count 2 for making false statements.  See 18 U.S.C. § 1001.  That conviction must stand.  But there is a rub: the record is tenebrous as to whether the district court intended the three-year sentence to run concurrently on Count 2.[2]  In all events, the vacation of the Count 1 conviction changes the sentencing calculus with respect to Count 2 and requires that the court sentence the defendant anew on Count 2.  See, e.g., United States v. García-Ortiz, 657 F.3d 25, 31 (1st Cir. 2011); United States v. Pimienta-Redondo, 874 F.2d 9, 14-16 (1st Cir. 1989) (en banc).  We therefore affirm the section 1001 conviction but remand to the district court for resentencing in due course.  The timing of this resentencing is, of course, committed to the sound discretion of the district court.

We need go no further.  For the reasons elucidated above, we affirm the defendant's conviction under 18 U.S.C. § 1001, vacate the defendant's conviction under 18 U.S.C. § 32(a)(5), and remand

---

imposed was both procedurally and substantively unreasonable.  It is unlikely that any of these claims will arise in the same posture if the case is retried.

[2] This opacity most likely results from the fact that Count 2 had no bearing on the combined offense level.  USSG §3D1.4(c) directs the sentencing court to "[d]isregard any Group that is 9 or more levels less serious than the Group with the highest offense level.  Such Groups will not increase the applicable offense level . . . ."  Here, the disparity between the offense level applicable to the Count 1 Group and that applicable to the Count 2 Group exceeded nine levels.  Thus, Count 2 did not increase the applicable offense level.

to the district court for further proceedings consistent with this opinion.

**<u>Affirmed in part, vacated in part, and remanded.</u>**