USA v. Maria M. Ulloa                    CR-12-02-JL    5/1/13     P

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                    Criminal No. 12-cr-02-01-JL
                               Opinion No. 2013 DNH 070P

Maria M. Ulloa

**MEMORANDUM ORDER**

In advance of the jury trial of Maria M. Ulloa on several counts of preparing and filing false or fraudulent income tax returns, see 18 U.S.C. § 287, the prosecution moved in limine to preclude various evidence from being used to impeach its witnesses. See L. Cr. R. 12.1(c). Specifically, it sought to exclude evidence of:

- a 2007 letter from United States Citizenship and Immigration Services ("C.I.S.") to a prospective prosecution witness, denying that witness's application for travel;

- another prospective witness's divorce, which a 1987 U.S. government memorandum characterized as "not genuine and contrived to achieve immigration status"; and

- a third prospective witness's marital infidelity, as well as the fact that the same witness had jointly filed an immigration form I-751 with his estranged wife.[1]

The court issued oral orders granting, or granting in part and denying in part, these motions; those orders are explained below.

---

[1]The prosecution also filed a motion in limine seeking to exclude evidence of another prospective witness's residence in an apartment leased under her sister's name, and that same witness's 2010 tax returns. The court took that motion under advisement, but Ulloa did not seek to introduce any such evidence at trial. That motion is therefore denied as moot.

At trial, an issue also arose as to the purposes for which the jury could consider evidence that a prosecution witness had engaged in conduct substantively identical to that charged in this case. The court, adopting the position urged by the prosecution, held that under Rule 404(b) of the Federal Rules of Evidence, the jury could not use that evidence to infer that the witness was likely to have also committed the acts charged against Ulloa, and instructed the jury accordingly. This ruling was erroneous, but, as explained below, was ultimately harmless.

## I. 2007 C.I.S. letter

The prosecution's first motion in limine seeks to preclude Ulloa from impeaching its witness, Mr. Torres, with a 2007 letter from C.I.S. "stating that on April 30, 2007, Torres filed form I-131, Application for Travel, which was denied because the illness from which [he] claimed his mother suffered could not be verified by her doctor in Honduras." The prosecution argues that the letter and the incident related therein are not probative of Torres's "character for truthfulness or untruthfulness," and thus not proper impeachment evidence under Federal Rule of Evidence 608(b), because C.I.S. "never made a determination as to whether Mr. Torres's claim of family illness was false; rather, it concluded only that there was insufficient corroborating evidence to justify an issuance of the requested travel permit." The

2

prosecution is mistaken about the probative value of evidence regarding Torres' application and its denial, which is admissible both under Rule 608(b) and as evidence of possible bias. C.I.S.'s letter is nonetheless inadmissible for certain purposes. The motion is therefore granted in part and denied in part.

Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." So, insofar as Ulloa might seek to use the 2007 letter itself to imply that Torres previously misrepresented his mother's medical condition, and is therefore more likely to give false testimony in this action, the rule bars her from doing so. To that limited extent, the prosecution's motion is granted.

Rule 608(b) also explains, however, that the court may permit inquiry into "specific instances of a witness's conduct . . . if they are probative of the [witness's] character for truthfulness or untruthfulness." Thus, if the conduct related in the letter (as distinct from the letter itself) is probative of Torres's character for truthfulness, Ulloa may cross-examine him about it. This standard is plainly met. The Court of Appeals has recognized that "a witness's willingness to lie to the government in an application . . . is highly probative of his

character for truthfulness." United States v. Shinderman, 515 F.3d 5, 17 (1st Cir. 2008).

Though the prosecution suggests that evidence of the denial of Torres's application is not probative of his truthfulness "absent any discernible finding of falsity" by C.I.S. as to his claim of family illness, the test for admissibility under Rule 608(b) does not require the proponent to establish prior untruthful conduct by the witness to a certainty before inquiring about it. Rather, "the general rule is that the questioner must be in possession of some facts which support a general belief that the witness committed the offense or the degrading act to which the question relates." United States v. Whitmore, 359 F.3d 609, 622 (D.C. Cir. 2004) (internal quotation marks omitted); cf. also 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 608.02[9], at 608-19 (2011) ("[T]he courts have held that a party must have a 'plausible basis' to believe that the witness committed the bad act before it can be made the subject of inquiry."). Here, the 2007 letter's reference to the fact that Torres's mother's doctor could not verify the illness claimed by Torres in his application "supports a general belief

that" Torres fabricated that illness, and Ulloa is entitled to explore this issue with Torres on cross-examination.[2]

As Ulloa notes, moreover, evidence that the U.S. government denied Torres's application is also relevant and admissible on cross-examination inasmuch as it shows possible bias in favor of the government. That Torres must seek government approval to travel--and has relatively recently been denied such approval--could suggest that Torres might shade his testimony to please the government and improve his chances of obtaining approval in the future. "There is no question of the relevance of" evidence that a witness has a "motivation to lie to continue to curry favor with the government." United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988). What's more, "a witness's self-interest or motive to testify falsely is generally considered to be a non-collateral issue," United States v. Beauchamp, 986 F.2d 1, 4 (1st Cir. 1993), so "extrinsic evidence is admissible to show bias," United States v. Gomes, 177 F.3d 76, 81 (1st Cir. 1999), even if that evidence would otherwise be inadmissible under Rule 608(b), United States v. Abel, 469 U.S. 45, 55-56 (1984). So, if Ulloa

---

[2]In so doing, of course, she will have to accept the answers Torres gives and cannot disprove them by reference to the letter itself. See United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir. 1993) ("[W]hen a witness testifies to a collateral matter, the examiner must take the answer, i.e., the examiner may not disprove it by extrinsic evidence.") (internal quotation marks and alterations omitted).

wishes to use the 2007 letter to show Torres's possible bias, she may do so (subject to an appropriate limiting instruction, see Fed. R. Evid. 105). The motion is denied to the extent it seeks to prevent this use of the letter.

## II. "Contrived" divorce

The prosecution's second motion in limine seeks to preclude Ulloa from impeaching its witness, Mr. Lantigua, by inquiring into an incident related in a 1987 U.S. Embassy memorandum, in which the government denied Lantigua's application for a visa "because his divorce was determined to be not genuine and contrived to achieve immigration status." This incident, the prosecution argues, is too remote in time to be admitted into evidence. The court agrees.

As already discussed, Rule 608(b) permits inquiry into specific instances of a witness's conduct on cross-examination if those instances "are probative of the [witness's] character for truthfulness or untruthfulness." That rule would ordinarily permit inquiry into a witness's willingness "to engage in deceptive practices to avoid immigration laws." United States v. Thiongo, 344 F.3d 55, 60 (1st Cir. 2003) (concluding that service "as a legal witness to a sham marriage designed to avoid immigration laws" was "fairly probative of . . . truthfulness"). To protect against abuse, however, "specific instances of conduct

6

inquired into . . . must not be remote in time." United States v. Mateos-Sanchez, 864 F.2d 232, 236 (1st Cir. 1988); see also Thiongo, 344 F.3d at 59 (similar); cf. also 2 Saltzburg et al., supra § 608.02[4], at 608-10 ("[T]he older the act, the less it says about the witness' current propensity to lie on the stand.") (emphasis in original). Here, over a quarter-century had elapsed between Lantigua's sham divorce and the time of trial. This gulf of time is, in this court's view, too large for evidence of that instance of untruthfulness to have any value to the jury in assessing Lantigua's veracity. Cf. United States v. Holden, 557 F.3d 698, 703 (6th Cir. 2009) (prior misrepresentations properly excluded as having "little if any relevance to [witness's] ability to testify truthfully about an unrelated subject more than a decade later"); United States v. Schwab, 886 F.2d 509, 513-14 (2d Cir. 1989) (trial judge erroneously permitted inquiry into charges made against witness 23 and 18 years before trial).

This is true even if, as Ulloa suggests, the denial of an immigrant visa might otherwise demonstrate that a witness has a motive "to slant his testimony in favor of the government[]" because he is "subject to the policies and whims of immigration authorities." Extrinsic evidence offered to prove bias is subject to Federal Rules of Evidence 402 and 403. See Fed. R. Evid. 608 Advisory Committee Notes, 2003 Amendments (citing

United States v. Winchenbach, 197 F.3d 548 (1st Cir. 1999)). As is the case with Rule 608(b), under those rules evidence may properly be excluded if its probative value has been "attenuated by the passage of time." United States v. Rodriquez, 215 F.3d 110, 120-21 (1st Cir. 2000); cf. Harrower v. La. ex rel. La. Dep't of Transp., 327 Fed. Appx. 501, 502 (5th Cir. 2009) (district court properly excluded evidence of 25-year-old incident as "so remote in time that the probative value of the evidence was extremely limited"). That is the case here, where--unlike Mr. Torres's relatively recent run-in with immigration, see supra Part I--a decades-old contretemps with immigration authorities does not make it particularly likely that Lantigua has any present motive to shade his testimony to please the government. The prosecution's second motion in limine is granted.

**III. Marital infidelity & joint filing of immigration form**

In its third motion in limine, the prosecution seeks to preclude Ulloa from impeaching its witness, Mr. Mayor, with evidence of (a) his 1999 filing of a joint I-751 Petition to Remove the Conditions of Residence with his estranged wife; and (b) his marital infidelity over eleven years ago. The prosecution argues that neither topic is probative of Mayor's character for truthfulness, and that the latter topic is too

8

remote in time to have any significant probative value in any event. The court agrees that Mayor's marital infidelity is not probative of his character for truthfulness (at least under these circumstances), and the motion to exclude cross-examination on that topic is granted. The motion is denied, however, as to Mayor's filing of a joint I-751 petition with his estranged wife.

The court turns again to Rule 608(b), which permits cross-examination on prior instances of conduct if they "are probative of the [witness's] character for truthfulness or untruthfulness." Ulloa expressly disclaimed any intention of inquiring about Mayor's infidelity on cross-examination, and the court agrees with the government in any event that this instance of marital infidelity, standing alone, has no value in evaluating Mayor's character for truthfulness or untruthfulness. Cf. Thiongo, 344 F.3d at 60-61 ("Evidence Defendant bore the man's child while married to another man does not appear to be relevant or probative of Defendant's truthfulness or untruthfulness."); United States v. Ndiaye, 434 F.3d 1270, 1289-90 (11th Cir. 2006) (trial court should not have permitted inquiry into defendant's "attempt to engage in a surreptitious relationship with a woman who was not his wife" as it did "not directly relate to [his] truthfulness and honesty"). The prosecution's motion is granted as to that evidence.

Evidence that Mayor may have misrepresented his marital status on an immigration form by filing jointly with his wife, from whom he was estranged, however, is potentially probative of Mayor's character for truthfulness. As just mentioned, the Court of Appeals has held that "a witness's willingness to lie to the government in an application," Shinderman, 515 F.3d at 17, or "to engage in deceptive practices to avoid immigration laws," Thiongo, 344 F.3d at 60, is fair game for cross-examination under Rule 608(b). The prosecution, echoing an argument made in its first motion in limine, see supra Part I, protests that Mayor's filing may just have been "a mistake born of inexperience" and that cross-examination should not be permitted in the absence of "evidence of intentional dishonesty." But, as already discussed, Rule 608(b) requires only that the questioner have some facts supporting a belief that the witness engaged in prior dishonest conduct, Whitmore, 359 F.3d at 622, and the admitted inaccuracy in the filing alone supports that belief. If Mayor's conduct was indeed just a "mistake," as the prosecution suggests, then he can provide that explanation on cross-examination (and Ulloa will have to accept that answer, see supra n.2). The motion to exclude cross-examination on this topic is denied.[3]

_____

[3]Prior to trial, the court tentatively ruled that the filing of the I-751 was too remote in time to be probative of Mayor's truthfulness. Cf. supra Part II. That ruling was, however, only

10

## IV.  **Evidence of witness's similar crimes**

At trial, prosecution witness Gladys Pena gave testimony acknowledging that, while working for Ulloa, she had committed crimes substantively identical to those with which Ulloa was charged.  (Indeed, Pena had herself been charged with and convicted of violating 18 U.S.C. § 287.  See United States v. Pena-Dominguez, No. 10-cr-1252 (S.D.N.Y. judgment entered June 22, 2011).)  There was no dispute that this evidence was relevant and admissible.  The parties did disagree, however, as to the ends to which the jury could consider it.  Ulloa contended that the jury should be permitted to infer from this evidence that Pena had a propensity to commit the type of offense with which Ulloa was charged (and that it was therefore possible that she, rather than Ulloa, had in fact committed the charged offenses).  The prosecution, for its part, asserted that Rule 404(b) of the Federal Rules of Evidence explicitly prohibits the use of "other crimes" evidence for this purpose, and only permits a jury to consider it for other purposes including motive, opportunity, and plan.  The court, after due consideration of the authority cited by both sides, agreed with the prosecution's view and instructed

_____

preliminary, and the court expressly invited Ulloa to revisit the issue during trial.  This written order reflects the court's reconsidered position on the admissibility of this evidence.

11

the jury accordingly.[4]  The court is now compelled to acknowledge that it erred in doing so--albeit harmlessly.

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  The rule therefore prohibits the introduction of evidence of other crimes solely "for the purpose of showing villainous propensity."  United States v. Rozkowski, 700 F.3d 50, 56 (1st Cir. 2012).  That is exactly what Ulloa sought to do with evidence of Pena's substantially similar prior offenses.  Ulloa argued, however--among other things--that Rule 404(b)'s limitation does not apply to witnesses other than the defendant.  In support of this argument, Ulloa relied primarily on Holmes v. South Carolina, 547 U.S. 319 (2006), in which the United States Supreme Court held that the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that

_____

[4]In full, the instruction stated:

You have heard evidence that one of the witnesses, Gladys Pena, previously engaged in conduct similar to that charged in this case.  You may not infer simply that because Pena committed the similar acts, that she also committed the acts of which the defendant is accused.  You may consider the evidence only for the limited purpose of deciding whether Pena had an opportunity to commit the acts of which the defendant is accused, as well as the identity of the person who committed the offenses.

12

they are asserted to promote," but did not interpret (or so much as mention) Rule 404(b).  In response, the prosecution cited United States v. McCourt, 925 F.2d 1229 (9th Cir. 1991), a decision of the Court of Appeals for the Ninth Circuit directly rejecting the interpretation of Rule 404(b) urged by Ulloa.  As the decision in McCourt was entirely consistent with the language and structure of Rule 404(b), and Ulloa had not cited any apposite authority of her own, the court found the prosecution's argument more persuasive.

Curiously, neither side cited any of the multiple cases from the Court of Appeals for this Circuit holding that "Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant," United States v. González-Sánchez, 825 F.2d 572, 583 (1st Cir. 1987), and that "[o]bjections based on Rule 404(b) may be raised only by the person whose 'other crimes, wrongs, or acts' are attempted to be revealed," United States v. David, 940 F.2d 722, 736 (1st Cir. 1991); see also United States v. Procopio, 88 F.3d 21, 29 n.1 (1st Cir. 1996); United States v. Isabel, 945 F.2d 1193, 1200 (1st Cir. 1991).  While Rule 404 has undergone several minor amendments since the time these cases were decided, none of those amendments would appear to have any effect on the outcomes, which have not been overruled or otherwise questioned by the Court of Appeals.  In light of this

13

authority, it is clear that the court's limiting instruction to the jury was legally incorrect. And, although it is tempting to lay the responsibility for this error at the feet of the parties, given their failure to cite any of the directly controlling authority, the fault lies with the court.

But "[e]ven an incorrect instruction to which an objection has been preserved will not require [the court] to set aside a verdict if the error is harmless." United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012); cf. United States v. Levy-Cordero, 67 F.3d 1002, 1011 (1st Cir. 1995) (concluding erroneous 404(b) limiting instruction was harmless). Where, as here, an error is "not of constitutional dimension," the defendant's conviction may "stand, error notwithstanding, as long as it can be said with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Sasso, 695 F.3d at 29 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). That is the case here.

The jury was not precluded from considering Pena's prior convictions at all; rather, the jury heard about those convictions in detail. Consistent with Rule 404(b)(2)--which provides that evidence of a person's other crimes, wrongs, or acts "may be admissible for another purpose, such as proving

14

mistake, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of evidence"--the court instructed the jury that it could consider that evidence in "deciding whether Pena had an opportunity to commit the acts of which the defendant is accused, as well as the identity of the person who committed the offenses."  In other words, the jury was told that evidence of Pena's prior conduct was relevant to the identity of the person who committed the offenses of which Ulloa was accused, and that it was entitled to take that evidence into account when considering whether Ulloa was in fact the person who committed those offenses.  That is precisely the purpose for which Ulloa sought to use the evidence, and the erroneous limiting instruction given to the jury did not prevent her from doing so.  Because this error cannot have "substantially swayed" the jury's verdict, it was harmless and the court will grant no relief as a result.

## V.  Conclusion

For the reasons set forth above, the government's motions in limine nos. 1 and 3[5] are GRANTED IN PART and DENIED IN PART.  The

---

[5]Documents nos. 41 & 43.

15

government's motion in limine no. 2[6] is GRANTED, and its motion in limine no. 4[7] is DENIED as moot.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 1, 2013

cc:  Bjorn R. Lange, Esq.
     Nick Abramson, Esq.
     William E. Morse, Esq.

---

[6]Document no. 42.

[7]Document no. 44.