# United States Court of Appeals
## For the First Circuit

---

No. 13-1577

UNITED STATES OF AMERICA,

Appellee,

v.

MARIA M. ULLOA,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph L. Laplante, U.S. District Judge]

---

Before

Thompson and Selya, Circuit Judges,
and McConnell, Jr.,* District Judge.

---

Bjorn Lange, Federal Public Defender Office, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom John P. Kacavas, United States Attorney, was on brief, for appellee.

---

July 28, 2014

---

*Of the District of Rhode Island, sitting by designation.

**MCCONNELL, District Judge.** A jury convicted Maria Magdelena Ulloa of ten counts of submitting fraudulent federal tax returns in violation of 18 U.S.C. § 287. On appeal, Ms. Ulloa argues that the district court erred in three ways: by (i) finding that the jury instruction preventing the jury from considering a co-worker's criminal conduct as propensity evidence under the Federal Rules of Evidence Rule 404(b) was harmless error; (ii) declining to strike the summary testimony of Internal Revenue Service ("IRS") Agent Tama Mitchell; and (iii) refusing to grant Ms. Ulloa's motion for acquittal on Count Eight pursuant to the Federal Rules of Criminal Procedure Rule 29. Finding no reversible error in the district court's rulings, we affirm.

## I. BACKGROUND

We recount the facts in the light most favorable to the jury verdict, consistent with the court record below. United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997).

Ms. Maria Magdelena Ulloa, owner of Main Travel in Nashua, New Hampshire, provided services, including travel, as the name suggests, as well as tax preparation and filing, the services at issue in this case. It seems that Ms. Ulloa had a reputation within the Nashua community for maximizing her customers' refunds by embellishing certain details. Many witnesses testified at her trial that they began using Main Travel's services because they heard that Ms. Ulloa could prepare returns claiming fictitious

dependents and day care costs. On some occasions, she included this information on tax returns with the customers' knowledge, but sometimes they were not aware. In all cases, Ms. Ulloa would prepare these false returns, file them with the IRS, and take a fee. That fee came in several different forms.

Ms. Ulloa's tax preparation business partnered with Santa Barbara Bank and Trust ("SBBT") to establish a refund anticipation loan program so that Main Travel customers could be given expedited tax refunds in the amount anticipated in the form of a loan. Ms. Ulloa would electronically file the individual's tax return with the IRS and simultaneously, SBBT would receive the refund anticipation loan application. Ms. Ulloa would either pay a reduced refund up front to the customer and then fraudulently endorse the bank loan check to Main Travel or demand cash payment from the customer who later received a refund directly from the IRS.

The thrust of Ms. Ulloa's defense was to blame a Main Travel employee, Gladys Pena, for all of the fraudulent activity at Main Travel. Ms. Ulloa employed Ms. Pena at Main Travel from January until June of 2007. Prior to working with Ms. Ulloa, Ms. Pena and her two children lived with Ms. Ulloa. Ms. Pena had a prior criminal conviction for fraud and served a ninety-day prison term for that offense. While employed at Main Travel, Ms. Pena learned that Ms. Ulloa was falsifying tax returns and

began to do the same.  At Ms. Ulloa's direction, Ms. Pena forged a customer's name on a refund anticipation loan check for Ms. Ulloa to deposit in her own bank account.  Ms. Pena had access to Ms. Ulloa's bank accounts.

Meanwhile, Ms. Pena also filed fraudulent tax returns on behalf of Main Travel customers without Ms. Ulloa's knowledge.  She concealed her activity and deposited the ill-gotten gains in her own bank accounts.  While Ms. Pena was away in the Dominican Republic in June of 2007, Ms. Ulloa discovered her crimes. Ms. Pena never returned to Main Travel.  Ms. Pena ultimately pled guilty to charges arising from her employment at Main Travel, but testified that she was not responsible for filing any of the returns for which Ms. Ulloa was charged.

Ms. Ulloa was tried on ten counts of presenting false tax returns to the IRS for the 2006 and 2007 tax years.  Following a five-day trial, the jury convicted Ms. Ulloa on all counts. Ms. Ulloa was sentenced to 21 months in prison.  She has timely appealed to this court.

## II.      ANALYSIS

Ms. Ulloa argues that the district court committed three errors at trial that are fatal to her convictions.

### A.      THE RULE 404(B) JURY INSTRUCTION

At trial, both the Government and Ms. Ulloa's counsel asked Ms. Pena about the other fraud-based crimes that she

committed before and after her employment at Main Travel. During the trial, the district court declined to give the propensity instruction that Ms. Ulloa proposed. Instead, the district court instructed the jury that it could not infer based on the evidence of Ms. Pena's other crimes that she had a propensity to commit the crimes of which Ms. Ulloa was charged, but that it could consider Ms. Pena's prior criminal acts on the issue of opportunity or identity. However, upon reconsideration, after the trial and verdict against Ms. Ulloa, the district court found that it had erred in limiting the jury's consideration of and ability to infer a propensity to commit fraud based on Ms. Pena's other crimes. Citing this court's prior decisions, the district court concluded that the jury should not have been limited in its consideration of Ms. Pena's other crimes. See United States v. David, 940 F.2d 722, 736 (1st Cir. 1991) ("Objections based on Rule 404(b) may be raised only by the person whose 'other crimes, wrongs, or acts' are attempted to be revealed." (citation omitted)); United States v. Gonzalez-Sanchez, 825 F.2d 572, 583 (1st Cir. 1987) ("Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant."); see also United States v. Procopio, 88 F.3d 21, 29 n.1 (1st Cir. 1996); United States v. Isabel, 945 F.2d 1193, 1200 (1st Cir. 1991). The district court determined that its error was "not of constitutional dimension," however, and undertook to analyze the effect of the error under a conventional harmless error

standard. Reflecting on the record as a whole, the district court determined that the error was harmless.

On appeal, Ms. Ulloa challenges the district court's denial of her request for an instruction to the jury that it could consider Ms. Pena's prior criminal acts as evidence of her (Ms. Pena's) propensity to commit crimes of fraud. Ms. Ulloa agrees with the district court that it erred in its instruction, but urges that the error was not harmless as it found. She adds that because the jury was not permitted to consider Ms. Pena's other, similar crimes, for the purpose of showing propensity to have committed these crimes, the error violated her constitutional right to present a complete defense and thus was of constitutional dimension. Therefore, the district court should have applied a more stringent standard, requiring the Government to prove beyond a reasonable doubt that the error did not influence the verdict. The Government, on the other hand, argues that the district court's reliance on the above cases was misplaced and therefore, it did not err in instructing the jury on Rule 404(b). Alternatively, the Government argues that if the district court did err, then its analysis under the harmless error standard was appropriate as was its conclusion of harmless error. For purposes of this appeal, this court will assume without deciding that the district court was correct in concluding that the jury instruction it gave on Rule 404(b) evidence was in error. Beyond that assumption, we must

consider whether the assumed error is of constitutional magnitude. After all,

> [t]here are two standards for measuring harmless error in a criminal case. The less grueling standard (viewed from the government's coign of vantage) allows a conviction to stand as long as a reviewing court can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. This less grueling standard applies chiefly to errors of a non-constitutional dimension. The stricter standard, which applies to errors of constitutional dimension, requires reversal unless the government proves beyond a reasonable doubt that the error did not influence the verdict.

United States v. Melvin, 730 F.3d 29, 39 (1st Cir. 2013) (internal quotation marks and citations omitted).

While the opportunity to present a complete defense is constitutionally guaranteed, see Holmes v. South Carolina, 547 U.S. 319, 324 (2006), this court finds that the district court's erroneous jury instruction on propensity did not abridge Ms. Ulloa's right to present a complete defense. While it did restrict the jury's consideration of Ms. Pena's propensity, it did not prevent Ms. Ulloa from introducing copious amounts of evidence of Ms. Pena's similar fraudulent acts. She did introduce that evidence and the district court instructed the jury that it could consider it in "deciding whether Pena had an opportunity to commit the acts of which the defendant is accused, as well as the identity of the person who committed the offenses." United States v. Ulloa, 942 F. Supp. 2d 202, 209 (D.N.H. 2013). As the district court

found below, Ms. Ulloa was able to defend herself by arguing to the jury that Ms. Pena was the person who committed the fraudulent acts despite the legally incorrect instruction. Therefore, she was not deprived of her defense and the instruction was not an error of constitutional dimension meriting review under the harmless beyond a reasonable doubt standard.

Using the less stringent harmless-error standard, the district court determined that Ms. Ulloa's convictions should stand because the jury heard about Ms. Pena's convictions for similar conduct and was told that "evidence of Pena's prior conduct was relevant to the identity of the person who committed the offenses of which Ulloa was accused, and that it was entitled to take that evidence into account when considering whether Ulloa was in fact the person who committed those offenses." Ulloa, 942 F. Supp. 2d at 209. In other words, the jury was instructed that it could consider the evidence to determine whether it was Ms. Pena, not Ms. Ulloa, who committed the charged crimes.

Obviously, because Ms. Ulloa argued at the outset that the error was of a constitutional dimension, she believes that it would also fail under the conventional harmless error analysis based on the same defense that Ms. Pena committed the fraudulent acts, not her. She asserts that the jury instruction limited the efficacy of her defense. The district court found that Ms. Ulloa did in fact defend herself by blaming Ms. Pena and therefore, the

incorrect jury instruction had no effect on the verdict and was a harmless error.

This court agrees with the district court. Ms. Ulloa defended herself by turning the focus on Ms. Pena's prior criminal conduct and the limiting instruction did not prevent her from doing just that. The jury heard Ms. Pena testify that she used Ms. Ulloa's debit card for electronic fund transfers. Ms. Pena also testified that she fabricated thousands of dollars of checks, forged signatures, and deposited the money in fake accounts that she later withdrew. Moreover, the other evidence against Ms. Ulloa was overwhelming, diffusing the impact of the erroneous instruction. See United States v. Pridgen, 518 F.3d 87, 92-93 (1st Cir. 2008). Eight of her customers testified that they dealt with her directly, contradicting her defense that it was Ms. Pena who committed those frauds. In light of the fact that the instructions permitted the jury to consider Ms. Pena's prior criminal conduct as evidence that she could have committed, and had the opportunity to commit, the fraudulent acts that Ms. Ulloa was accused of, the limitation of the jury's consideration on propensity was insignificant and would not have substantially swayed the verdict.

The district court recognized its error and determined that it did not impact the verdict in light of the trial record as a whole. The bottom line is that we see no reversible error here. Ms. Ulloa's convictions should stand.

**B. SUMMARY TESTIMONY OF IRS AGENT TAMA MITCHELL**

Ms. Ulloa next argues that the district court erred in declining to strike the summary testimony of IRS Agent Tama Mitchell. Agent Mitchell testified that the Count Three and Count Seven taxpayers each paid a portion of their IRS refund money to Ms. Ulloa. She moved to strike the testimony as beyond the scope of a summary witness because it was beyond Agent Mitchell's personal knowledge. The district court denied the motion.

On appeal, Ms. Ulloa argues that Agent Mitchell's testimony relied on inadmissable hearsay and put the imprimatur of the Government on the testimony of two witnesses who were motivated to curry favor with the Government based on their immigration status. The Government counters that Agent Mitchell merely summarized the testimonial evidence from the taxpayers in order to show that the money was deposited into Ms. Ulloa's account. We review a trial court's decision to admit or exclude evidence for abuse of discretion. See United States v. Maldonado-Garcia, 446 F.3d 227, 231 (1st Cir. 2006).

The district court did not abuse its discretion in declining to strike the agent's brief, summary testimony. This court has found in the past that allowing an IRS agent to testify summarily is useful in tax cases as long as the testimony "does no more than analyze facts already introduced into evidence" and "the witness does not directly address the ultimate question" in the

-11-

case.  See United States v. Stierhoff, 549 F.3d 19, 28 (1st Cir. 2008)(tax evasion).  Agent Mitchell's testimony fits within the confines of that rule.  The jury heard the same testimony from the taxpayers themselves.  Agent Mitchell merely summarized the money trail for each fraudulent refund, using the taxpayers' own testimony.  Ms. Ulloa has not raised, and nothing in the record demonstrates, that Agent Mitchell expressed an opinion on whether Ms. Ulloa intended to file false tax returns.  See id.  This point of error is rejected.

### C.    SUFFICIENCY OF THE EVIDENCE ON COUNT EIGHT

Ms. Ulloa's final argument on appeal is that the district court erred in denying her motion for a judgment of acquittal on Count Eight pursuant to Federal Rules of Criminal Procedure Rule 29.  Count Eight involved a tax return filed on behalf of George Melo, who testified that he met with "Magdelena" at Main Travel and gave her the names of dependent children he wanted to claim on his taxes.  Because Mr. Melo never specifically identified Ms. Ulloa as the "Magdelena" he met with at Main Travel, Ms. Ulloa asserts that the Government did not prove beyond a reasonable doubt that she committed that fraud.  The Government counters that Ms. Ulloa was undoubtedly "Magdelena" because that is her middle name.  It also points out that the jury could infer that Mr. Melo did meet with Ms. Ulloa because he testified that he specifically went to

-12-

Ms. Ulloa's business because he heard from others that she could falsify his tax return.

In order to prove a tax fraud violation under 18 U.S.C § 287, the Government had to demonstrate that Ms. Ulloa knowingly made and presented false, fictitious, and fraudulent claims to the IRS.  We consider an appeal from the denial of a Rule 29 motion de novo.  See United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013).  Specifically,

> we examine the evidence, both direct and circumstantial, in the light most favorable to the jury's verdict.  We do not assess the credibility of a witness, as that is a role reserved for the jury.  Nor need we be convinced that the government succeeded in eliminating every possible theory consistent with the defendant's innocence.  Rather, we must decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.

United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009) (citations and internal quotation marks omitted).

The evidence in this case was overwhelming such that a rational jury could conclude beyond a reasonable doubt that Ms. Ulloa committed the fraud charged in Count Eight.  Mr. Melo testified that he worked on his 2006 tax return together with Magdelena at her office at Main Travel.  Magdelena is Ms. Ulloa's middle name.  The jury could reasonably have found that Ms. Ulloa was the person at Main Travel with whom Mr. Melo met and prepared false tax returns.  This a reasonable conclusion since Mr. Melo

testified that he sought out Ms. Ulloa's business upon the recommendation of others that Ms. Ulloa could falsify the child care and dependent information on his tax return. He repeatedly answered questions at trial that referenced his meetings and discussions with Ms. Ulloa about claiming deductions for dependent children who did not live with him. These two facts alone, in the context of this entire case, would be sufficient to ground an inference that Ms. Ulloa knowingly made fraudulent claims to the IRS on Mr. Melo's behalf, but there is more. The evidence also established that Mr. Melo gave Ms. Ulloa the information she needed to complete the fraudulent forms, that she processed the return, and he received the money in the form of a refund anticipation loan from the bank. All of these facts are more than sufficient to support the jury's verdict on Count Eight; Ms. Ulloa knowingly presented false, fictitious, and fraudulent claims to the IRS.

**III.    CONCLUSION**

We see no error in the district court's analysis of the effect of the erroneous jury instruction or IRS Agent Mitchell's testimony. Further, the record supports the jury's verdict against Ms. Ulloa as to each claim, including Count Eight.

**<u>Affirmed</u>.**