**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ADAM GARDENHIRE,
*Defendant-Appellant*.

No. 13-50125

D.C. No.
2:12-cr-00345-SVW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
November 18, 2014—Pasadena, California

Filed April 30, 2015

Before: Kim McLane Wardlaw and Richard A. Paez,
Circuit Judges and Michael A. Ponsor,[*] Senior District
Judge.

Opinion by Judge Wardlaw

---

[*] The Honorable Michael A. Ponsor, Senior District Judge for the U.S. District Court for Massachusetts, sitting by designation.

**SUMMARY**[**]

---

### Criminal Law

The panel vacated a sentence imposed for knowingly aiming the beam of a laser pointer at an aircraft in violation of 18 U.S.C. § 39A, and remanded for resentencing, in a case in which the district court applied an enhancement for reckless endangerment under U.S.S.G. § 2A5.2(a)(2)(A).

The panel held that the district court erred in concluding that the defendant acted recklessly when he aimed his laser beam at the aircraft, where the record is devoid of evidence, let alone clear and convincing evidence, that the defendant was aware of the risk created by his conduct.

The panel could not say that the error was harmless, and instructed that the matter be assigned to a different district judge on remand. The panel observed that the district court's statements show its commitment to the idea that, regardless of the evidence presented, the defendant's conduct was reckless, and that it would likely impose the same sentence on remand, regardless of this court's rulings.

In light of the extremely steep sentencing regime dictated by the recklessness enhancement for wide-ranging conduct covered by § 2A5.2, the panel wrote that it is particularly important that the government is held to its burden of proof and that the enhancements are supported by clear and convincing evidence.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew Brady Larsen (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Kerry C. O'Neill (argued) and Melissa Mills, Assistant United States Attorneys; Robert E. Dugdale, Chief Assistant United States Attorney; André Birotte Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

**OPINION**

WARDLAW, Circuit Judge:

We must decide whether the district court correctly found that Adam Gardenhire recklessly endangered an aircraft within the meaning of U.S.S.G. § 2A5.2(a)(2)(A) when he pointed a laser beam at a Cessna Citation jet, in violation of 18 U.S.C. § 39A.

**I.**

On March 29, 2012, Adam Gardenhire, age eighteen, aimed a green laser pointer at an incoming seven-passenger Cessna Citation jet as it approached the Burbank Airport near his home. The captain and pilot were onboard the private jet when the laser struck the pilot's eye. Although momentarily blinded and distracted by the laser, the pilot was able to safely land the aircraft. Gardenhire also aimed the laser pointer at a police helicopter that was dispatched to determine the laser's source. Having located the source of the laser, the police arrived at Gardenhire's home. Following Gardenhire's

admission that "[i]t was me with the laser," the officers located the laser pointer in his grandfather's bedroom and arrested Gardenhire.

Gardenhire, a high school student, explained to the FBI that he had borrowed the laser from a friend. Gardenhire and his friend had been using the laser to play around in their neighborhood, pointing it at parked cars, stop signs, and other objects. Gardenhire's friend warned him against shining the laser directly at anyone's eyes because it could blind someone. Though Gardenhire intentionally tried to hit the aircraft, he never saw the laser actually reach it. He later learned that he "struck two planes with the laser." At the time, Gardenhire did not think about the dangers of pointing the laser at an aircraft and was simply bored.

The government charged Gardenhire with two counts of knowingly aiming the beam of a laser pointer at an aircraft in violation of 18 U.S.C. § 39A—one count each for the Cessna Citation jet and the police helicopter. The parties entered into a plea agreement, in which Gardenhire agreed to plead guilty to aiming the laser pointer at the Cessna Citation jet, and the government agreed to dismiss the police helicopter count. The government also agreed to recommend a two-level reduction for acceptance of responsibility at sentencing pursuant to U.S.S.G. § 3E1.1 and, if available, an additional one-level reduction. On October 29, 2012, Gardenhire entered a plea of guilty to aiming a laser at the Cessna Citation jet. Despite the government's agreement with Gardenhire that he was an appropriate candidate for the Conviction and Sentence Alternatives program ("CASA"), a post-guilty plea diversionary program, the district court denied a CASA referral.

On December 21, 2012, the U.S. Probation Office issued its Pre-Sentence Investigation Report ("PSR") and a recommendation letter. Presumably because the statutory offense to which Gardenhire pleaded guilty had been enacted just six weeks before the date of his offense conduct, no sentencing Guideline expressly corresponded to its violation. *See* FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, § 311, 126 Stat. 11, 65-66 (Feb. 14, 2012). Therefore, pursuant to U.S.S.G. § 2X5.1, the Probation Office used the most analogous Guideline, which it concluded was U.S.S.G. § 2A5.2, "Interference with Flight Crew Member or Flight Attendant; Interference with Dispatch, Navigation, Operation, or Maintenance of Mass Transportation Vehicle."[1] The Probation Office recommended a recklessness enhancement under U.S.S.G. § 2A5.2(a)(2)(A), which doubled Gardenhire's base offense level, increasing it to eighteen.

The only issue at sentencing was whether Gardenhire "recklessly endangered" the safety of an aircraft within the meaning of U.S.S.G. § 2A5.2(a)(2). The Probation Office concluded that he did because he "knowingly and intentionally aim[ed] a laser pointer at both the airplane and helicopter." The Probation Office then recommended a three-level reduction of the offense level for acceptance of responsibility, found one criminal history point for a prior juvenile adjudication, and recommended a Guidelines sentencing range of eighteen to twenty-four months.

---

[1] The Guidelines have since been amended to expressly list U.S.S.G. § 2A5.2 as the applicable Guideline section for 18 U.S.C. § 39A. Appendix A, United States Sentencing Commission Guidelines Manual (2013) (incorporating Guideline amendments effective November 1, 2013, and earlier).

The district court concluded that the Probation Office properly calculated the Guidelines range, finding by clear and convincing evidence that Gardenhire was aware of the dangers of pointing the laser at the Cessna Citation jet. It imposed an above-Guidelines sentence of thirty months' imprisonment plus three years of supervised release, after taking into account the factors provided in 18 U.S.C. § 3553(a). The district court placed particular emphasis on the "need for deterrence" and expressed the hope that the sentence would be publicized so that "young people" would know this sort of "prank" cannot be tolerated. Gardenhire timely appeals.[2]

## II.

We have jurisdiction to review Gardenhire's sentence under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review the district court's findings of fact underlying its sentencing decision for clear error. *United States v. Naghani*, 361 F.3d 1255, 1263 (9th Cir. 2004). Clear error requires a "definite and firm conviction that a mistake" occurred. *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc). We will reverse only when a district court's factual findings are "illogical, implausible, or without support in the record." *United States v. Fitch*, 659 F.3d 788, 797 (9th Cir. 2011).

---

[2] A two-judge panel of our court granted Gardenhire's motion for release pending appeal on July 9, 2013, finding, *inter alia*, that his appeal raises a substantial question of law or fact that is fairly debatable.

## III.

## A.

The district court correctly noted that the government bore the burden of showing by clear and convincing evidence that Gardenhire recklessly endangered the aircraft.[3] *United States v. Gonzalez*, 492 F.3d 1031, 1039 (9th Cir. 2007). The district court also correctly set forth the definition of "reckless" provided in Application Note 1 to U.S.S.G. § 2A1.4. *Naghani*, 361 F.3d at 1263 (noting that Application Note 1's definition of "reckless" for involuntary manslaughter applies in this context). Section 2A1.4 defines "reckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1; *see also United States v. Rodriguez-Cruz*, 255 F.3d 1054, 1059 (9th Cir. 2001) (defining reckless). However, the district court erred in concluding that Gardenhire acted recklessly when he aimed his laser beam at the aircraft. The record is devoid of evidence, let alone clear and convincing evidence, that Gardenhire was aware of the risk created by his conduct.

---

[3] Generally, the party seeking to adjust an offense level must establish that the adjustment is merited by a preponderance of the evidence, but the burden increases to clear and convincing evidence if the adjustment will "have a disproportionate impact on the ultimate sentence imposed." *United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006); *see Gonzalez*, 492 F.3d 1031 at 1039. In *Gonzalez*, we concluded that the heightened standard was appropriate for the nine-level recklessness enhancement under U.S.S.G. § 2A5.2(a)(2)(A). 492 F.3d 1031 at 1039–40.

The district court relied on Gardenhire's statement to the FBI that he intentionally tried to hit the aircraft with his laser beam. But this fact does nothing to show that Gardenhire was aware that if he hit the jet, as intended, he could blind or distract the pilot. In finding recklessness, the district court also relied on the "fact" that Gardenhire knew his laser was powerful enough to reach the aircraft. The district court found, incorrectly, that it was "uncontroverted" that Gardenhire stated he "hit the helicopter 'two to three times' and he hit the two different planes two times." From that "fact" the court concluded that Gardenhire knew "as soon as he actually observed his laser strike the aircraft" that the beam could travel such a distance. But whether Gardenhire saw his laser beam strike an airplane is controverted—in the very next paragraph of the same FBI report, by Gardenhire's statement that "he never saw the laser hit the planes but he pointed the laser at the airplanes." And even if Gardenhire knew that the beam struck the aircraft, at most that evidences knowledge that he could succeed in striking the jet, not awareness of the consequences of the beam strike—the risk that the pilot could be blinded or distracted or the aircraft otherwise endangered.

Our conclusion is in accord with the First Circuit, which has made clear that deliberate and intentional acts that happen to result in endangering the safety of an aircraft are insufficient to prove willfulness. In *United States v. Sasso*, the defendant was charged under 18 U.S.C. § 32(a)(5), which makes it a crime to "willfully . . . interfere[ ] with or disable[ ], with intent to endanger the safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of [an] aircraft or any air navigation facility aiding in the navigation of any such aircraft." 695 F.3d 25, 30 (1st Cir. 2012) (alterations in

original).   In *Sasso*, the jury was instructed, "If a person's actions interfere with an aircraft operator, you may infer that the person acted willfully if his actions were deliberate and intentional and had the natural and probable effect of interfering with the aircraft operator."  *Id.*   The defendant argued that this instruction "erroneously diluted the mens rea requirement" of the statute, and the First Circuit agreed.  *Id.* The First Circuit held that this "instructional error may have influenced the verdict," and therefore vacated the conviction and remanded for a new trial.  *Id.* at 31.

As in *Sasso*, the district court here made the unsupported leap from deliberate and intentional action to consciousness of risk.   In concluding Gardenhire was aware of the risk caused by his actions simply because he deliberately aimed at the aircraft, and purportedly knew the beam could reach the aircraft, the district court significantly and erroneously diluted the mens rea required for application of the recklessness enhancement. *See id.* at 30.

The district court's finding that Gardenhire was aware of the risk created by his conduct lastly rests on the fact that Gardenhire's high school friend who lent him the laser told him "not to shine the laser at anyone's eyes because it would blind people."   But knowing that a laser beam can cause blindness when pointed directly at a person's eyes is very different than knowing that a laser beam can be distracting to pilots who are both enclosed in a cockpit and at least 2,640 feet away.  Nor did the government submit any evidence of what even an average person would know about the effects of aiming a laser beam at an aircraft.  According to one of the lead investigators in this case, an officer pilot, the beam of a laser pointer that is "only the size of a pencil on the ground" can intensify to "12 inches in diameter depending on the

distance." In other words, "the farther away it gets from the point of origin, the beam spreads out," thus increasing its hazardousness, a notion that is counterintuitive, especially when one considers that an ordinary light beam would grow fainter. Additionally, the laser pointer is particularly hazardous to an aircraft when the beam is refracted off the cockpit glass, which intensifies the light even more, resulting in a "bright, dazzling beam" that lights up the entire cockpit. That one knows that the laser is dangerous when pointed directly in a person's eyes does not mean that one knows about the beam's ability to expand and refract, rendering it particularly hazardous for pilots in an aircraft miles away, or that the danger is heightened at nighttime because the pilot's eyes have adjusted to the dark.

Citing *Naghani*, the district court concluded that Gardenhire "reasonably knew or should have known that his laser strikes would distract the jet pilot and interfere with the pilot's operation of the aircraft, thereby endangering the aircraft." *See* 361 F.3d at 1263. But by not examining the facts of *Naghani* and quoting one sentence out of context from that decision, the district court conflated the subjective, "defendant was aware of the risk," and the objective, "standard of care that a reasonable person would exercise in such a situation," prongs of the standard for recklessness. The government provided no evidence, let alone clear and convincing evidence, that Gardenhire was aware of the risks created by aiming the beam at the aircraft. And the district court failed to address Gardenhire's awareness of risk, focusing exclusively on the nature and degree of the risk that a reasonable person would not disregard. Naghani acted in very different circumstances, where the average person would be immediately aware of the consequences of his actions.

In *Naghani*, an airplane passenger lit a cigarette in the lavatory, set off the smoke alarm, and failed to respond to a flight attendant's knock on the lavatory door. *Id.* at 1258. Naghani refused to admit he had been smoking and refused to reveal the location of his cigarette. *Id.* The situation continued to escalate and a "verbal confrontation ensued," in which Naghani threatened to "kill all Americans." *Id.* Because of Naghani's aggressive and confrontational behavior, flight attendants forced Naghani to sit in a jump seat near the lavatory and informed him the plane might have to turn around and return to its originating location. *Id.* at 1259. In upholding the recklessness enhancement, we emphasized that "[t]he district court properly found that Naghani was aware of the risk created by his smoking, obstreperous behavior and threats." *Id.* at 1263. Naghani's conduct and the immediate consequences of his conduct provide bountiful circumstantial evidence from which to infer Naghani was subjectively aware of the risk created by his conduct. Naghani had clear safety warnings not to smoke on the airplane—the very action he performed despite the warnings. Furthermore, Naghani's refusal to cooperate with flight attendants and his threatening behavior obviously and immediately caused the flight staff to attend to him to mitigate the danger in which he had put the aircraft by smoking. The immediate reaction to Naghani's behavior made it clear to Naghani that he was dangerously interfering with the normal operations of the aircraft, and yet his disruptive behavior only escalated. By contrast, Gardenhire heeded the only warning he was given—not to shine the laser directly in anyone's eyes—and he was not immediately alerted to any additional risks he was creating by aiming the beam at an aircraft.

In *United States v. Gonzalez*, we also drew a clear and logical inference that the defendant was subjectively aware of the risk created by similarly disruptive conduct. 492 F.3d 1031. There, a passenger on a Southwest Airlines flight complained of heart problems, refused to sit down, demanded that the airplane land, opened overhead bins and attempted to remove passengers' luggage, ultimately threatening that he had a bomb on the airplane. *Id.* at 1032–33. The flight attendants heard Gonzalez say "I have [a] bomb" and "I'm blowing the plane up." *Id.* at 1033 (alteration in original). A hysterical Gonzalez then began to kick and hit passengers until flight attendants and other passengers eventually tackled and held him down. *Id.* at 1033–34. Gonzalez's actions caused "total chaos" onboard, supporting the logical inference that he was subjectively aware of the risks of his threatening and violent conduct. *Id.* at 1032. As we concluded in *Gonzalez*, "It doesn't take an aeronautical engineer to recognize that a threat of a bomb in that environment and the havoc that such a threat might cause is a threat to the safety of the aircraft." *Id.* at 1038.

Unlike in *Naghani* and *Gonzalez*, here the government introduced no evidence that supported a subjective awareness of the consequences of aiming a laser beam at an aircraft, and the bare admission that Gardenhire intentionally aimed the laser, knowing that it was dangerous to shine the laser in someone's eyes, does not support the inference the district court drew—that he was aware of the dangers to the aircraft from doing so. Had the government submitted circumstantial or direct evidence that Gardenhire was aware of the laser's long-distance power, expansion capabilities, and ability to refract off the cockpit glass, the district court could have found subjective awareness. But it did not; nor did it demonstrate that as of six weeks after the effective date of

18 U.S.C. § 39A, "Aiming a laser pointer at an aircraft," the dangers of shining a laser at an aircraft were of general knowledge to the average person, or of specific knowledge to teens.

At the first sentencing hearing on February 25, 2013, the district court understood that the evidence in the record at that time supported no more than intentional aiming and that the government needed to submit evidence as to Gardenhire's knowledge of the danger, which the government had not "established." Expressing its frustration with the government's failure to submit evidence that Gardenhire was aware that aiming a laser beam at an aircraft would endanger it, or linking his knowledge that the laser should not be pointed at a person's eye to a supposed intentional effort to aim it at the pilot's eye, the district court continued the hearing so that the government could get him the FBI reports that it represented contained the critical evidence. However, the reports did not evidence that Gardenhire was subjectively aware of the risks; rather they indicated that Gardenhire told the FBI agents that "he didn't think about the dangers of what he was doing" and "was just bored." The only other relevant evidence submitted was the defense expert's testimony that there have been "literally thousands" of laser incidents over the last decade, and none resulted in a crash. Finally Gardenhire himself told the judge, "[I] would just like to say that I'm sorry; I didn't know the risks of this laser pointer. In this trial, I learned that—it's not going to happen again, and I've learned so much." Thus the government never met its burden of establishing that Gardenhire was aware of the risk created by his conduct.

Because the government failed to show by clear and convincing evidence that Gardenhire met the first prong of

the recklessness enhancement test, we need not address the second prong. The district court procedurally erred by enhancing Gardenhire's offense level for recklessness.

**B.**

We cannot say that the district court's error was harmless. The district court's post-hoc statement that it would impose the same sentence even if reversed by the Ninth Circuit does not render the procedural error harmless. *United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011) (per curiam) (holding that a "district court's mere statement that it would impose the same above-Guidelines sentence no matter what the correct calculation cannot, without more, insulate the sentence from remand"). After Gardenhire filed his notice of appeal, Gardenhire moved the district court for release pending appeal. It was undisputed that Gardenhire was not a flight risk and that his purpose in bringing the motion was not for delay, the first two prongs of the standard for granting release. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985); *see also* 18 U.S.C. § 3143(b). The district court denied the motion for failure to satisfy the third prong: whether the defendant raised a substantial question, which, if favorably ruled upon, would result in a reduced sentence. The district court reasoned that "even if the Ninth Circuit rules that the sentencing guideline should not incorporate the recklessness enhancement, the Court would find that the revised guideline would not adequately account for the seriousness of the offense, or the need to deter such reckless conduct." Further, the court indicated it "likely would impose the same above-guidelines sentence to meet those demands under § 3553(a)." These statements, indicating the district court's reasoning for denying bail, do not render its procedural error harmless.

They do, however, suggest that the district court judge would be unable to set aside the nine-level enhancement for recklessness, and would simply impose the same above-Guidelines sentence upon remand. The district court's statements show its commitment to the idea that, regardless of the evidence presented, Gardenhire's conduct was reckless and the above-Guidelines sentence was needed to deter others. It thus appears the district court judge "would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous." *Ellis v. U.S. Dist. Court (In re Ellis)*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc) (quoting *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1118 (9th Cir. 2001)). The district court has informed the parties that it would likely impose the same sentence on remand, regardless of our ruling. *See United States v. McGowan*, 668 F.3d 601, 609 (9th Cir. 2012). Taking the court at its word, we vacate Gardenhire's sentence and ask the Clerk of the Court for the Central District of California to assign this matter to a different district court judge on remand.[4] *Id.*

## IV.

The significant error caused by the district court's misapplication of the recklessness enhancement raises broader concerns regarding U.S.S.G. § 2A5.2. This section

---

[4] Having found a procedural error in the Guidelines calculation, we need not address Gardenhire's allegation that his sentence was also substantively unreasonable. *United States v. Flores*, 725 F.3d 1028, 1035 (9th Cir. 2013) ("If we find a material error in the Guidelines calculation, 'we will remand for resentencing, without reaching the question of whether the sentence as a whole is reasonable.'" (quoting *United States v. Kilby*, 443 F.3d 1135, 1140 (9th Cir. 2006))).

provides the Guidelines range for eleven U.S. Code sections and subsections.[5]  The conduct criminalized by these eleven provisions is wide-ranging.  *See, e.g.*, 18 U.S.C. § 32(a)(1) (willfully setting fire to an aircraft), 18 U.S.C. § 37 (intentionally performing an act of violence against a person at an airport), 18 U.S.C. § 39A (aiming a laser pointer at an aircraft), 18 U.S.C. § 1992(a)(6) (incapacitating the operator of a mass transportation vehicle with intent to endanger safety), 49 U.S.C. § 46503 (assaulting an airport employee), 49 U.S.C. § 46504 (assaulting a flight crew member or flight attendant), 49 U.S.C. § 46308(2) (continuing to maintain a misleading light after a warning).  The statutory maximum for the statute criminalizing Gardenhire's conduct is five years.  18 U.S.C. § 39A.  Other statutes with sentencing ranges guided by U.S.S.G. § 2A5.2 have statutory maximums of twenty years, life imprisonment, or even death.  *See, e.g.*, 18 U.S.C. § 37.  The Guidelines range for Gardenhire's misguided, teenage prank, which at least he no doubt now understands has serious consequences for others, as well as for himself, and the Guidelines range for "[t]errorist attacks and other violence against . . . mass transportation systems" are determined under the very same Guidelines section.  *See* 18 U.S.C. § 1992.

Certain conduct with a Guidelines range dictated by U.S.S.G. § 2A5.2 is truly abhorrent.  Accordingly, it is not surprising that the offense levels and corresponding Guidelines ranges ratchet up very quickly under this Guideline.   Under U.S.S.G. § 2A5.2, the recklessness

---

[5] Appendix A of the U.S.S.G. indicates that the following statutes correspond to U.S.S.G. § 2A5.2: 18 U.S.C. § 32(a), (b); 18 U.S.C. § 37; 18 U.S.C. § 39A; 18 U.S.C. § 1992(a)(1), (a)(4), (a)(5), (a)(6); 49 U.S.C. § 46308; 49 U.S.C. § 46503; 49 U.S.C. § 46504.

enhancement doubles the base offense level, and an enhancement for intentionally endangering the safety of an aircraft more than triples the base offense level. In light of this extremely steep sentencing regime, it is particularly important that the government is held to its burden of proof and that the enhancements are supported by clear and convincing evidence.[6]

Through the erroneous application of the recklessness enhancement, Gardenhire's base offense level jumped from nine to eighteen. Considering Gardenhire's criminal history category of I, a base offense level of nine would have resulted in a Guidelines range of four to ten months, whereas a base offense level of eighteen resulted in a Guidelines range of twenty-seven to thirty-three months.[7] The district court's

---

[6] Considering the wide range of conduct that results in Guidelines ranges dictated by U.S.S.G. § 2A5.2 and the steep corresponding sentencing regime, the U.S. Sentencing Commission may wish to consider different sentencing Guidelines for certain crimes currently being funneled into U.S.S.G. § 2A5.2. An offense such as Gardenhire's seems to be different in both kind and degree from many other offenses with Guidelines ranges calculated under U.S.S.G. § 2A5.2.

[7] This calculation does not take into account the reductions recommended by the government and suggested in the PSR. Under Gardenhire's plea agreement, the government agreed to recommend a two-level reduction at sentencing pursuant to U.S.S.G. § 3E1.1. This would reduce Gardenhire's correct offense level from nine to seven. An offense level of seven corresponds to a Guidelines range of zero to six months, considering Gardenhire's criminal history category of I. Comparing this Guidelines range to Gardenhire's thirty-month term of imprisonment highlights the severity of the district court's error and the sentence imposed. The district court imposed a prison term five times greater than the high-end of the correctly calculated Guidelines range, taking into account the reduction under the plea agreement. The unfairness in this

error in finding recklessness minimized, and indeed potentially eliminated, the critical distinction between these separate Guidelines ranges.

## V.

The government did not show by clear and convincing evidence that Gardenhire was aware of the risks created by his conduct. In applying the recklessness enhancement, the district court materially erred, resulting in a miscalculated Guidelines range. We vacate Gardenhire's sentence and remand for resentencing.

**VACATED and REMANDED with instructions to the Clerk to assign to a different district court judge.**

---

sentencing regime is only highlighted by the government's willingness to place Gardenhire in CASA at the outset.