FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30275 |
| Plaintiff-Appellee, | D.C. No. 2:20-cr-00215-RSM-1 |
| v. | |
| ELLEN BRENNAN REICHE, | OPINION |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted August 11, 2022
Seattle, Washington

Before: Morgan Christen, Kenneth K. Lee, and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed on Ellen Reiche whom a jury convicted of Violence Against Railroad Carriers in violation of 18 U.S.C. § 1992(a)(5), in a case in which Reiche, in order to stop an incoming train carrying crude oil and strike a blow against the fossil fuel industry, secretly placed a shunt on railroad tracks to tamper with the rail signaling system.

The panel held that the district court did not err in applying a sentencing enhancement pursuant to U.S.S.G. § 2A5.2(a)(2) for recklessly endangering the safety of a mass transportation vehicle. Disagreeing with Reiche's argument that she was unaware of the risks posed by the shunt, the panel held that the district court correctly concluded that a reasonable person would understand that unexpectedly stopping a freight train, as it barrels down the tracks, poses an obvious risk of harm.

The panel also held that the district court did not err in denying Reiche a downward sentencing adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The panel wrote that the district court recognized that Reiche's decision to go to trial did not necessarily bar her from receiving a sentencing reduction but determined that she had not shown genuine acceptance of responsibility. The panel concluded that the district court did not abuse its discretion in making this determination.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Jesse Cantor (argued) and Christopher Sanders, Assistant Federal Public Defenders; United States Federal Public Defender's Office, Seattle, Washington, for Defendant-Appellant.

Teal Luthy Miller (argued), Philip Kopczynski,; Sok Tea Jiang, and Thomas Merton Woods, Assistant United States Attorneys; Nicholas W. Brown, United States Attorney; Office of the United States Attorney, Seattle, Washington; for Plaintiff-Appellee.

LEE, Circuit Judge:

Clad in all-black outfits and masks, Ellen Reiche, along with an accomplice, surreptitiously approached a remote set of railroad tracks during the midnight hour. In her bag, Reiche carried wires, a drill, scissors, and gloves. Reiche then secretly placed a "shunt" on the tracks to tamper with the rail signaling system and force trains to halt. Her goal was to stop an incoming train carrying crude oil and thus strike a blow against the fossil fuel industry. Law enforcement, however, detected the two women, foiling their plan.

Reiche was convicted of Violence Against Railroad Carriers. 18 U.S.C. § 1992(a)(5). In imposing a sentence of twelve months and one day of imprisonment, the district court applied a sentencing enhancement for "recklessly" endangering the safety of a mass transportation vehicle. U.S. Sent'g Guidelines Manual (U.S.S.G.) § 2A5.2(a)(2) (U.S. Sent'g Comm'n 2021). Reiche now appeals, arguing that she was unaware of the risks posed by the shunt. We disagree. The district court correctly concluded that a reasonable person would understand that unexpectedly stopping a freight train, as it barrels down the tracks, poses an obvious risk of harm.

We also affirm the district court's rejection of a sentencing reduction for acceptance of responsibility. The court recognized that Reiche's decision to go to trial did not necessarily bar her from receiving a sentencing reduction. The court,

2

however, determined that she had not shown genuine acceptance of responsibility.

## BACKGROUND

I.      **Ellen Reiche interferes with a railroad track's signaling system to protest fossil fuels.**

Around midnight on Thanksgiving weekend in 2020, Ellen Reiche and Samantha Brooks snuck onto BNSF Railway's railroad tracks near Bellingham, Washington. The women wore masks and black clothing to evade detection. They also left their cell phones at home to avoid digital footprints that could place them at the railroad tracks.

Armed with knowledge gained from the internet, Reiche carried supplies to create a "shunt," a wire apparatus that connects to railroad tracks. A shunt disrupts the rail signaling system by indicating that the track is occupied or obstructed, thus causing incoming trains to stop with little notice. Reiche and Brooks successfully placed the shunt on the tracks, intending to "directly impede the fossil fuel supply chain" by stopping an incoming train carrying crude oil.

The Sheriff's Office deployed two deputies to the area after a motion-sensing camera captured images of Reiche and Brooks on the railroad tracks. When the first deputy arrived, he saw the women crouched down over the tracks. They walked away from the deputy after he identified himself, but they cooperated after the deputy jogged towards them. When the deputy questioned Reiche and Brooks, the women were evasive and untruthful.

3

The deputies later found a wire shunt concealed under rocks, near a section of the rail that looked like it had been cleaned of rust to improve connectivity between the shunt and the signaling system. The deputies arrested the women and searched Reiche's bag, in which they found wire, a drill with an attachment that could be used to clean rust off the rails, scissors, and gloves.

A grand jury indicted Reiche and Brooks with one count of Violence Against Railroad Carriers in violation of 18 U.S.C. § 1992(a)(5). Brooks pleaded guilty, while Reiche opted for a jury trial.

## II. The jury unanimously votes to convict Reiche of Violence Against Railroad Carriers.

At trial, the government called a BNSF supervisor to testify as an expert in rail signal systems. The expert explained that shunting is a "very dangerous act." A shunt causes the rail system to falsely detect that another train is on the tracks and thus signal for oncoming trains to stop. This can cause a "braking event," in which a train engineer must make an emergency stop if he or she lacks sufficient warning to gradually slow to a halt. If the engineer does not react in time, the train will automatically stop. BNSF witnesses explained that, whether because of an emergency stop or an automatic stop, suddenly stopping a train can cause the connectors between train cars to break, which can lead to decoupling or derailment. Only about a month before this incident, a train had separated "very violently" near Bellingham after a shunt forced a braking event.

4

The expert also testified that railroad crossings use the same signaling system as trains. A shunt can thus reduce or eliminate the warning times to motorists approaching a railroad crossing. The expert explained that Reiche's placement of the shunt within 200 feet of a railroad crossing would have interfered with the crossing signals. If a train had approached that shunt, the expert concluded that the train would have "very likely" reached the road before the first warning light engaged, endangering any drivers who might have been at the intersection.

Throughout the trial, Reiche's counsel maintained that the evidence failed to establish that she placed the shunt on the track. She also argued that the government failed to prove that the shunt was attached to the rails, that the track indication was so brief that it did not count as impairing the operation of the railway, and that something other than the shunt might have caused the manipulation of the signal system.

The jury voted to convict Reiche.

III. **At the sentencing hearing, the district court rejects Reiche's arguments.**

At Reiche's sentencing hearing, the parties addressed (1) whether Reiche "recklessly endangered" the safety of a mass transportation vehicle under U.S.S.G. § 2A5.2(a)(2), which carries a nine-point sentencing enhancement, and (2) whether the district court should credit Reiche's acceptance of responsibility for a downward sentencing adjustment.

5

Reiche argued that she was unaware of the risks posed by a shunt and thus should not receive a sentencing enhancement for recklessly endangering the safety of a mass transportation vehicle. To support her argument, Reiche submitted a letter explaining that she learned about shunting from eco-activist websites that advocated impeding the fossil fuel supply chain. She explained that she studied articles and reports that provided instructions on how to shunt a train but maintained that she never read about "any kind of danger associated with the act." Reiche thus argued that she thought that shunting was an "entirely safe" way to protest climate change and only realized its dangerousness when confronted with the government's evidence at trial. But one website printout that Reiche provided to the court described shunting as "rail sabotage" and advised readers to be "careful with yourselves, fingerprints, and DNA."

Reiche also submitted a letter to the court in which she stated that she accepted responsibility for her actions. She thus argued that, even though she elected to go to trial, she should be entitled to a two-level reduction for acceptance of responsibility.

The government disagreed. It argued that Reiche acted recklessly because a reasonable person would appreciate the risk of interfering with a railway signaling system. The government argued that it was "simply not believable" that Reiche thought shunting was "entirely safe." The government also noted that Reiche's preparations, actions at the railway, and evasive answers to law enforcement

6

suggested that she understood the risks of her conduct. Finally, the government maintained that Reiche's conduct was "not consistent with what the guidelines consider a genuine acceptance of responsibility."

The district court agreed with the Probation Office's sentencing recommendation. It first found by clear and convincing evidence that Reiche was aware of the dangers of placing a shunt. The court reasoned that it is "common knowledge" that tampering with a train signaling system may cause a "catastrophic incident" and that Reiche's careful research and preparation—coupled with her high intelligence—made it unlikely that she was ignorant of these risks.

Next, the district court noted that it had the authority to grant a downward adjustment for acceptance of responsibility, even though Reiche went to trial but it declined to exercise that authority because it did not find Reiche's avowed remorse convincing. Reiche told the court that she thought shunting was an "entirely safe and peaceful form of protest." But the court explained that Reiche's persistent denial of guilt and the severity of her conduct undermined her claim that she regretted her actions. As the district court stated, it would have given "a lot more credit to her letter, perhaps, if she'd simply, at some point in the trial, said, 'I get it. I understand.'" The court clarified that it was "not punishing [Reiche] for going to trial." Rather, it simply did not find facts to support that "she deserves the reward for that early acceptance of responsibility."

7

The court imposed a below-Guidelines sentence of twelve months and one day of imprisonment, plus three years of supervised release. Reiche timely appealed.

**STANDARD OF REVIEW**

This court reviews "the district court's interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and its application of the Guidelines to the facts for abuse of discretion." *United States v. George*, 949 F.3d 1181, 1184 (9th Cir.) (citing *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170–72 (9th Cir. 2017) (en banc)), *cert. denied*, 141 S. Ct. 605 (2020). "[A]s a general rule, a district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion." *Gasca-Ruiz*, 852 F.3d at 1170. If the district court selected the right Guidelines provision, de novo review is appropriate only when "in the course of rendering its decision, the district court formulates or adopts a generalized rule that will apply to an entire class of cases, not just to the case at hand." Id. at 1171.

**ANALYSIS**

I. **The district court did not err in finding that Reiche recklessly endangered the safety of a mass transportation vehicle.**

Under the U.S. Sentencing Guidelines, a defendant convicted of Violence Against Railroad Carriers, 18 U.S.C. § 1992(a)(5), starts off with a base offense level of nine. U.S.S.G § 2A5.2(a)(4). But "if the offense involved recklessly endangering the safety of . . . a mass transportation vehicle," the base offense level ratchets up to

8

18. *Id.* § 2A5.2(a)(2). To apply a sentencing enhancement based on recklessness, a district court must find by clear and convincing evidence that (1) "the defendant was aware of the risk created by his conduct" and (2) "the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *United States v. Gardenhire*, 784 F.3d 1277, 1280 (9th Cir. 2015) (quoting U.S.S.G. § 2A1.4 cmt. n.1). We address only the first prong because Reiche has contested only her awareness of the risk posed by her conduct.

A defendant is aware of the risk created by her conduct when she knows "facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk . . . , and the defendant knew of that risk." *United States v. Rodriguez*, 880 F.3d 1151, 1162 (9th Cir. 2018) (emphasis omitted). Importantly, the "obviousness of a risk may be used to prove subjective knowledge." *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1256 (9th Cir. 2016) (collecting cases) ("A jury could also infer the County Defendants' awareness . . . because the risk is obvious."). A court thus may infer a defendant's subjective awareness of risk if a reasonable person would understand that the defendant's actions are obviously dangerous.

Reiche relies on our decision in *United States v. Gardenhire* to argue against the reckless endangerment enhancement. In that case, the defendant, an eighteen-

year-old boy, aimed a laser pointer at an airplane flying over two-thousand feet in the air after being warned "not to shine the laser at anyone's eyes because it would blind people." 784 F.3d at 1281. This court reversed the district court's reliance on the reckless endangerment enhancement, ruling that the government had not shown that the defendant understood the risks or that the dangers "were of general knowledge to the average person, or of specific knowledge to teens." *Id.* at 1283. As the court put it, "knowing that a laser beam can cause blindness when pointed directly at a person's eyes is very different than knowing that a laser beam can be distracting to pilots who are both enclosed in a cockpit and at least 2,640 feet away." *Id.* at 1281; *see also United States v. Rodriguez*, 790 F.3d 951, 960 (9th Cir. 2015).

On the other hand, in *United States v. Naghani*, we affirmed the reckless endangerment enhancement for a defendant who lit a cigarette in an airplane bathroom, set off the smoke alarm, and then threatened to "kill all Americans." 361 F.3d 1255, 1258–59 (9th Cir. 2004). We held that the district court properly inferred that "Naghani was aware of the risk created by his smoking, obstreperous behavior and threats," emphasizing that "Naghani should have been aware that his behavior would divert the flight attendants' attention from their duties and require their presence," which could have impeded "an effective response by the flight attendants" if "an actual emergency had arisen." *Id*. at 1263.

We believe *Naghani* is more analogous here because Reiche's actions (like

the defendant's in that case) were obviously reckless and risky. It does not take a locomotive engineer to recognize that forcing a freight train to come to a sudden stop endangers the safety of those on and around it. *Cf. United States v. Gonzalez*, 492 F.3d 1031, 1038 (9th Cir. 2007) ("It doesn't take an aeronautical engineer to recognize that a threat of a bomb . . . and the havoc that such a threat might cause is a threat to the safety of the aircraft."). Indeed, it is a common trope even in cartoons and comics that a speeding train cannot stop quickly and may derail in trying to do so. And common sense underscores the danger of having a speeding vehicle stop suddenly: Imagine if someone placed nails on a road to cause a flat tire in a bid to stop cars. Perhaps the car could safely come to a stop—but any reasonable person would recognize that this is a risky thing to do because the car, for example, may careen off the road or spin out of control.

Yet Reiche planned to suddenly stop a speeding freight train carrying millions of gallons of crude oil, as it passed through a residential neighborhood. Reiche might be correct that the public does not know about the mechanics of shunting. And Reiche herself might not have understood the exact science of a shunt's interaction with the train's signaling system, even after studying materials teaching her how to make and install a shunt. But Reiche had to know that if her shunting efforts succeeded, she would have suddenly thrown the brakes on a moving freight train. Simply stated, a reasonable person would be immediately aware of the obvious risks

11

of this conduct. The district court thus did not err in finding that the "obviousness of [the] risk" meant that Reiche was subjectively aware of the risk presented by her conduct. *Harrington*, 785 F.3d at 1304.

Moreover, Reiche's research into shunting reinforces the district court's recklessness finding. *Cf. Gardenhire*, 784 F.3d at 1283 (mentioning knowledge specific to teenagers). She is not some "knucklehead" teenager who "aimed a laser pointer at a passing airplane just for the fun of it." *Rodriguez*, 790 F.3d at 953. Rather, she is a "highly intelligent" individual who carefully researched an illicit way to disrupt a moving train. She gained specialized knowledge about rail signaling systems and trains by studying "[m]ultiple reports and articles" on "various websites." The articles that Reiche submitted as examples of her research do not discuss the dangers of shunting, but, as Reiche suggested, these were not the only articles that she consulted. These facts are starkly different from those in *Gardenhire* in which someone, especially a teenager, may not appreciate that a small laser pen can blind an airplane pilot who is a couple thousand feet in the air. 784 F.3d at 1283.

In short, the district court's finding was not "illogical, implausible, or without support in the record" and thus does not warrant reversal. *Id.* at 1280 (quoting *United States v. Fitch*, 659 F.3d 788, 797 (9th Cir. 2011)). It did not err in finding that Reiche's conduct "involved recklessly endangering the safety of . . . a mass transportation vehicle" and thus did not abuse its discretion by applying the

12

corresponding sentencing enhancement under U.S.S.G. § 2A5.2(a)(2).

## II. The district court did not err in denying Reiche a downward sentencing adjustment for acceptance of responsibility.

The Sentencing Guidelines provide for a two-level downward sentencing adjustment for a defendant's acceptance of responsibility. U.S.S.G. § 3E1.1(a). To be eligible for this reduction, the defendant bears the burden of showing that she has genuinely accepted responsibility for her actions. *See United States v. Ramos-Medina*, 706 F.3d 932, 940 (9th Cir. 2013); *United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2002).

The Sentencing Guidelines state in a nonbinding comment that "this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 cmt. 2. But a "defendant's decision to go to trial does not necessarily foreclose him from receiving this offense-level decrease." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 990 (9th Cir. 2020) (citing U.S.S.G. § 3E1.1 cmt. 2), *cert. denied*, 142 S. Ct. 336 (2021). For example, the adjustment may be available "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt," U.S.S.G. § 3E1.1 cmt. 2, and "in appropriate circumstances the reduction is also available in cases in which the defendant manifests genuine contrition for his acts but

13

nonetheless contests his factual guilt at trial," *United States v. McKinney*, 15 F.3d 849, 853 (9th Cir. 1994).

Reiche argues that the district court erred in its interpretation of the Sentencing Guidelines by deferring to the nonbinding comment that the acceptance-of-responsibility adjustment should not apply to defendants who contest their factual guilt at trial. *See* U.S.S.G. § 3E1.1 cmt. 2. But the district court did not defer to the comment. To the contrary, the court recognized that it had the authority to grant the downward adjustment—it simply declined to do so considering the circumstances here. *See Ramos-Medina*, 706 F.3d at 940 (holding that a defendant who goes to trial "may still be eligible for a downward adjustment if, and only if, he has 'otherwise demonstrated sincere contrition'" (quoting *Cortes*, 299 F.3d at 1038)). In other words, the court did not adopt a general, per se rule foreclosing the availability of the acceptance-of-responsibility adjustment; it determined that this case did not warrant the downward adjustment.

The district court acknowledged that Reiche showed remorse for her actions. It also believed Reiche's statement that she grew to understand the severity of her actions during the government's presentation of its case. The court, however, was not convinced that Reiche deserved a sentencing adjustment for showing acceptance of responsibility for or understanding the severity of her actions. As the district court noted, Reiche contested her responsibility throughout her trial. If Reiche came to

14

understand the severity of her actions, she could have, at some point in the trial, said, "I get it. I understand." Instead, she waited until after the jury returned a guilty verdict before showing contrition. The district court thus concluded that it was "not punishing [Reiche] for going to trial," but it did not believe that she was entitled to a downward adjustment for acceptance of responsibility. The district court did not abuse its discretion in making this determination.

## CONCLUSION

We **AFFIRM** the district court's sentencing decisions.