# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2025

Lyle W. Cayce
Clerk

No. 24-50970

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Sandra Roberson,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:24-CR-28-1

---

Before Stewart, Dennis, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Sandra Roberson pleaded guilty to a single count of aiming a laser pointer at an aircraft in violation of 18 U.S.C. § 39A. After assigning an elevated base offense level on grounds that Roberson's offense involved the reckless endangerment of the safety of an aircraft under U.S.S.G. § 2A5.2(a)(2), the district court sentenced Roberson to 37 months'

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

imprisonment. Roberson now appeals her sentence. For the following reasons, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

On November 3, 2023, at approximately 10:20 p.m., two San Antonio Police Department ("SAPD") officers were travelling via police helicopter to support other SAPD patrol officers that were responding to a shooting call. In the police helicopter, one SAPD officer served as the pilot and the other served as a tactical flight officer ("TFO"). As the officers in the police helicopter were flying within the airspace of Kelly Field, an intense green laser began persistently striking the helicopter. According to the TFO, the laser continuously struck the helicopter for a period of between five and ten minutes and was so intense that it illuminated the entire cockpit. As a result, the laser caused the pilot to experience temporary flash blindness and the officers were forced to take evasive action by abruptly steering the helicopter away to escape the laser, losing their ability to safely respond to the shooting call.

The laser continued to follow and strike the helicopter as it diverted course, so the TFO used an infrared camera, along with an onboard daylight camera, to locate the source of the laser. The TFO determined that the laser was coming from a location where a group of three individuals were sitting along a wall outside of a gas station on Bandera Road. Because the laser continuously struck the helicopter from the same location, the TFO was able to guide SAPD officers on the ground to that location and Roberson was identified as the individual striking the helicopter with the laser pointer.

No. 24-50970

Roberson was handcuffed and detained for questioning. After she was given her *Miranda* rights,[1] Roberson agreed to speak with the officers. She admitted to shining the laser but claimed she believed the object that she was striking with the laser was a drone. When officers informed Roberson that she had been striking an SAPD helicopter with the laser, she acknowledged that her actions were wrong and apologized.

On January 17, 2024, Roberson was indicted by a grand jury on one count of aiming a laser pointer at an aircraft in violation of 18 U.S.C. § 39A. A bench warrant was issued that day, and Roberson was arrested on January 30, 2024. Although she was subsequently released on an unsecured bond, her bond was rescinded on July 22, 2024, after numerous bond violations. She has since remained in custody.

On September 5, 2024, Roberson pleaded guilty to the charge in the indictment. The presentence investigation report ("PSR") included police reports, interviews with the SAPD helicopter pilot and TFO, and victim impact statements from the helicopter's crew members. The PSR assessed an elevated base offense level of 18 on grounds that Roberson's offense of pointing a laser at an aircraft involved "recklessly endangering the safety" of that aircraft. U.S.S.G. § 2A5.2. The PSR explained that the elevated base offense level was supported because Roberson had "repeatedly pointed a laser at a[n] SAPD helicopter, temporarily blinding the pilot and recklessly endangered the safety of an aircraft." Combined with Roberson's criminal history category of V, and a three-level adjustment for acceptance of responsibility, her adjusted offense level was 15 and the recommended Guidelines range was 37 to 46 months of imprisonment.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

No. 24-50970

Roberson objected to the base offense level of 18, arguing that she had not been reckless because she believed she was pointing the laser at a drone, not a police helicopter. The probation officer disagreed responding that the base offense level of 18 was justified because Roberson:

> used a green laser pointer to repeatedly strike the cockpit of the helicopter during a night operation. The laser caused the pilot to experience temporary flash blindness, which prompted him to take evasive action and turn the helicopter away from the laser. The crew members of the helicopter indicated the defendant persistently struck the aircraft with a laser for five to ten minutes and that the defendant aimed for their helicopter and intentionally shone the laser at them.

On November 18, 2024, during sentencing, Roberson again argued that she "did not act recklessly because she didn't have a subjective awareness of the risk that [the] laser pointer posed to the occupants of that helicopter." She continued by pointing out that the first thing she told officers when she was apprehended was that she "thought it was a drone," maintaining that she "had no idea that it was a manned helicopter."

The district court overruled Roberson's objection. It noted that under U.S.S.G. § 2A5.2, Roberson's base offense level of 18 was properly calculated, including its calculation of recklessness. The district court then reasoned:

> [Roberson] used the laser to strike the object for at least five to ten minutes. It was continuously aimed at the object. No one would just be pointing a laser continuously at a drone for all that period of time. That's circumstantial evidence that she knew this was some form of an aircraft, if not a helicopter. Also, common sense indicates that you also hear a helicopter. And so the objections are noted, but overruled.

4

The district court then sentenced Roberson at the bottom of the guidelines range to 37 months of imprisonment with credit for time served. Roberson filed this appeal.

## II. Standard of Review

We "review[] the district court's interpretation and application of the Sentencing Guidelines de novo. Factual findings underlying the district court's application of the Guidelines are reviewed for clear error." *United States v. Pringler*, 765 F.3d 445, 451 (5th Cir. 2014). If the district court's finding is plausible in light of the record as a whole, there is no clear error. *Id.* "A finding of fact is clearly erroneous only if, after reviewing all the evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Id.*

## III. Discussion

On appeal, Roberson argues that the district court reversibly erred by applying the elevated base offense level of 18 for recklessly endangering the safety of an aircraft. She contends that reckless endangerment requires subjective awareness of a risk that is then disregarded but the government failed to present evidence on her state of mind as to whether she knew that pointing a laser at an aircraft could endanger it. She reiterates that she thought the aircraft was a drone but even if she knew it was a helicopter, "that does not support the inferential leap that she was subjectively aware that she was endangering the aircraft."

The government responds that: (1) the district court plausibly found that Roberson knew she was aiming her laser pointer at a helicopter rather than a drone given that Roberson was close enough for the TFO to pinpoint her location and because she could hear the helicopter; (2) the district court plausibly found that Roberson's conduct was reckless given that she struck the helicopter for at least five minutes with a laser so bright that it illuminated

the entire cockpit and temporarily blinded the helicopter pilot, forcing the helicopter to take evasive action; and (3) to the extent Roberson argues that she did not know of the risk of aiming a laser pointer at a piloted aircraft, common sense dictates that when an individual intentionally strikes a manned aircraft that is trying to evade the laser for five to ten minutes, that individual knows that she is potentially blinding the flight crew, and thus, recklessly endangering the safety of the aircraft.

## A.

Under 18 U.S.C. § 39A(a), "[w]hoever knowingly aims the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States, or at the flight path of such an aircraft, shall be fined under this title or imprisoned not more than 5 years, or both." In turn, the Sentencing Guidelines provide that an elevated base offense level of 18 applies "if the offense involved recklessly endangering the safety of . . . an aircraft." U.S.S.G. § 2A5.2(a)(2). The Supreme Court has observed that "criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994).

This court has not yet addressed the specific issue of applying an elevated offense level to the offense of aiming a laser pointer at an aircraft on grounds that it involved recklessly endangering the safety of the aircraft. But the Eighth and Ninth Circuits have addressed the issue, reaching different conclusions, albeit under different evidentiary standards. *See* 18 U.S.C. § 39A(a); U.S.S.G. § 2A5.2(a)(2).

In *United States v. Gardenhire*, 784 F.3d 1277, 1278 (9th Cir. 2015), the 18-year-old defendant, Adam Gardenhire, aimed a green laser pointer at an incoming Cessna Citation jet as it approached the airport near his home. The pilot was momentarily blinded and distracted by the laser but was

6

nevertheless able to safely land the aircraft. *Id.* Gardenhire also aimed the laser pointer at the police helicopter that was dispatched to determine the source of the laser that had been pointed at the Cessna. *Id.* After locating the source of the laser, law enforcement went to Gardenhire's home where they arrested him after he admitted that he was the one with the laser. *Id.* at 1278–79.

Gardenhire pleaded guilty to one count of aiming a laser pointer at an aircraft in violation of 18 U.S.C. § 39A. *Id.* at 1279. The district court applied the reckless endangerment enhancement under U.S.S.G. § 2A5.2(a)(2), and sentenced Gardenhire above the Guidelines "express[ing] the hope that the sentence would be publicized so that 'young people' would know this sort of 'prank' cannot be tolerated." *Id.* at 1279–80.

Applying a clear-and-convincing standard of review, the Ninth Circuit held that the district court erred in concluding that Gardenhire acted recklessly when he aimed the laser beam at the aircraft because "[t]he record [was] devoid of evidence, let alone clear and convincing evidence, that Gardenhire was aware of the risk created by his conduct." *Id.* at 1280.[2] The court reasoned that the district court incorrectly categorized as uncontroverted Gardenhire's admission of striking each of the aircrafts "two to three times" because according to the same FBI report, he also told law enforcement that "he never saw the laser hit the planes[.]" *Id.* at 1280–81. The court further reasoned that "even if Gardenhire knew that the beam struck the aircraft, at most that evidences knowledge that he could succeed

---

[2] The Ninth Circuit recently held in *United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024) (en banc) that "clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing."

in striking the jet, not awareness of the consequences of the beam strike—the risk that the pilot could be blinded or distracted or the aircraft otherwise endangered." *Id.* at 1281. The court was unmoved by evidence in the record that the high school friend that had loaned Gardenhire the laser warned him "not to shine the laser at anyone's eyes because it would blind people." *Id.* Instead, the court maintained that "knowing that a laser beam can cause blindness when pointed directly at a person's eyes is very different than knowing that a laser beam can be distracting to pilots who are both enclosed in a cockpit and at least 2,640 feet away." *Id.*

To the contrary, in *United States v. Rogers*, 881 F.3d 1054, 1055 (8th Cir. 2018), the defendant, Jordan Rogers, repeatedly pointed a laser at a police helicopter, temporarily blinding the pilot. He pleaded guilty to one count of aiming a laser at an aircraft in violation of 18 U.S.C. § 39A. *Id.* Although Rogers initially denied knowing that the laser struck the helicopter, he subsequently admitted that he knew it did but claimed he did not know that anyone could be hurt. *Id.* The record contained an exhibit with police reports that included statements from one of Rogers's neighbors who recalled Rogers shining his laser at him while he (the neighbor) was in his car but aiming it away as he turned the car's headlights back on Rogers. *Id.*

The district court reasoned that Rogers exhibited knowledge of the dangerousness of his activity when he pointed the laser at the car but then stopped when the car's headlights shone towards him. *Id.* It further noted that Rogers followed the helicopter with his laser, hitting it on a purpose, and then lied to police about the incident. *Id.* On this basis, the district court applied a nine-level sentencing enhancement under U.S.S.G. § 2A5.2(a)(2) for recklessly endangering the safety of an aircraft. *Id.*

The Eighth Circuit upheld the district court's application of the enhancement under a clearly erroneous standard of review. *Id.* at 1056.

There, the court explained that Rogers's "earlier behavior in turning away the laser from the automobile established that he was aware of the danger of shining a laser at someone operating a vehicle." *Id.* Additionally, he admitted in an interview with law enforcement that he knew that shining a laser at an aircraft was wrong. *Id.* Given these facts, the court opined that it was reasonable for the district court to infer that Jordan was aware of the danger of pointing the laser at an aircraft. *Id.* The court concluded that the district court's finding of reckless endangerment was "plausible in light of the record as a whole." *Id.* In addressing the discord between its opinion and the Ninth Circuit's opinion in *Gardenhire*, the *Rogers* court reasoned:

> In *Gardenhire*, the record was "devoid of evidence" that the defendant was aware of the risk created by his conduct. *Id.* at 1280. Here, by contrast, evidence supported the district court's conclusion that Rogers was reckless. Insofar as *Gardenhire*'s reasoning might forbid a district court to rely on a defendant's knowledge that a laser beam can blind or endanger a person on the ground to infer knowledge of the risk to a piloted aircraft, we disagree.

*Id.*

## B.

Here, although Roberson initially claimed she believed she was striking a drone and not a helicopter, her assertion is belied by the evidence in the record. Like the defendant in *Rogers*, Roberson continuously[3] pointed the laser at a police helicopter and temporarily blinded the pilot. 881 F.3d at 1055. Both Rogers and Roberson initially denied knowing that they struck the aircraft, but later conceded that they did know, and admitted that their conduct was wrong. *Id.* at 1055–56. Regardless of her initial claims, however,

---

[3] In *Rogers*, the term "repeatedly" is used.

Roberson concedes in her brief on appeal that "[t]he facts found by the district court could certainly support a finding that [she] intentionally pointed the laser at the aircraft." Given this concession, the only remaining part of her argument for us to address is her contention that the record fails to support the district court's inference that she was aware of the danger posed by striking a manned aircraft with a laser.

Similar to the defendant in *Rogers*, Roberson claims that she was unaware that striking an aircraft with a laser could have put anyone in danger or at risk. 881 F.3d at 1055. According to Roberson, because she lacked the "subjective awareness" of the risk of endangerment to the helicopter when she struck it with the laser, she could not have acted recklessly.[4] As the Eighth Circuit was unpersuaded by this argument in *Rogers*, we are similarly unpersuaded now.

Contrary to *Gardenhire*, the record in Roberson's case is by no means "devoid" of evidence that she was aware of the risk created by her conduct. 784 F.3d at 1280. As the district court observed, the record indicates that Roberson used the laser to continuously strike the police helicopter for at least five minutes, possibly longer. Indeed, she continued to follow and strike the helicopter even after it quickly diverted its flight path to avoid the laser, presumably illuminating not only the entire cockpit but also other parts of the aircraft as it turned away from her. The fact that Roberson followed the helicopter with the laser as it abruptly changed its flight path supports an

---

[4] We disagree with the government that Roberson failed to preserve this argument by making it before the district court thus resulting in our review for plain error. Our examination of the record supports Roberson's contention in her reply brief that she did preserve the issue by mentioning it during sentencing. For this reason, we continue to analyze it under a clearly erroneous standard of review. *Pringler*, 765 F.3d at 451.

inference, at a minimum, that she knew she was interfering with the aircraft's ability to fly safely and properly. Furthermore, Roberson's ability to follow the helicopter with the laser as it attempted to fly in another direction supports the district court's conclusion that it was close enough for her to see that she was striking "some form of an aircraft, if not a helicopter."[5] Moreover, the TFO's ability to pinpoint Roberson's exact location based on her continuous laser strikes supports the district court's inference that the distance between the two was short enough that she could likely hear that the aircraft was a helicopter.

As the government points out, Roberson's conduct here is a far cry from the teenager's in *Gardenhire* who may have struck the aircrafts "two to three times" with a laser. 784 F.3d at 1280-81. Moreover, *Gardenhire* involved an 18-year-old defendant, with only one prior criminal history point resulting from a juvenile adjudication. *Id.* at 1279. Roberson on the other hand, was nearly 60 years old at the time of her offense in this case. As her PSR plainly indicates, she has an extensive record of nearly three dozen prior arrests and/or convictions (33 total) spanning four decades (1983–2024), resulting in a staggering criminal history category of V—the second highest available under the Guidelines. Roberson's criminal history period alone is more than twice Gardenhire's age at the time of his arrest. *Id.* at 1280. Her numerous run-ins with law enforcement further undermine her initial claim that she could not tell the difference between a drone and a police helicopter.

_____

[5] We are unpersuaded by Roberson's argument in her reply brief that the TFO's use of an infrared camera indicated that she could have been farther away than the record suggests and thus the district court's conclusion that she could see that she was striking a helicopter was speculative. Indeed, if she was close enough to train her laser on the helicopter continuously for at least five minutes, even as it attempted to divert its path and fly away from her, the record adequately supports the district court's inference that she was close enough to see it.

No. 24-50970

In sum, because her arguments are entirely contradicted by the record evidence, we are unconvinced that Roberson was not subjectively aware of the risk posed to the police helicopter when she continuously struck it with a laser for at least five minutes, forcing it to abruptly divert its path. We thus conclude that the district court's factual findings and inferences in support of the elevated based offense level are "plausible in light of the record as a whole." *Pringler*, 765 F.3d at 451. Accordingly, we uphold the district court's application of U.S.S.G. § 2A5.2(a)(2) on grounds that it did not clearly err in determining that Roberson's offense in this case involved recklessly endangering the safety of an aircraft.

## IV. CONCLUSION

Roberson's sentence is AFFIRMED.